## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**WP COMPANY LLC**
**d/b/a THE WASHINGTON POST**,

  1301 K Street NW
  Washington, DC 20071

            Plaintiff,

v.                                                                          Case No.  1:21-cv-1025

**U.S. DEPARTMENT OF DEFENSE**,

  1600 Defense Pentagon
  Washington, DC 20301-1600

**U.S. DEPARTMENT OF THE AIR FORCE**,

  1740 Air Force Pentagon
  Washington, DC 20330-1740

**U.S. DEPARTMENT OF THE ARMY**,

  104 Army Pentagon
  Washington, DC 20310-0104

**U.S. DEPARTMENT OF THE NAVY**,

  720 Kennon Street SE, Room 233
  Washington Navy Yard, DC 20374-5013

**U.S. DEPARTMENT OF STATE**,

  2201 C Street NW
  Washington, DC 20520

            Defendants.

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff WP Company LLC d/b/a *The Washington Post* ("the *Post*") brings this suit against

Defendants U.S. Department of Defense ("DOD"), U.S. Department of the Air Force (the "Air

Force"), U.S. Department of the Army (the "Army"), U.S. Department of the Navy (the "Navy"),

and U.S. Department of State (the "State Department").  In support thereof, the *Post* states as follows:

## INTRODUCTION

1.      This is an action brought pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, for declaratory, injunctive, and other appropriate relief.  Through FOIA, the *Post* seeks records relating to the growing number of retired U.S. military personnel – including some of our nation's highest-ranking former generals and admirals – who have sought permission to work for compensation by foreign governments.

2.      The *Post* sought records concerning this practice from DOD, the State Department, and each branch of the United States Armed Forces.

3.      These records will lend transparency to the process by which senior service members seek and receive our federal government's approval to deploy their unique American military experience in the service of foreign governments, including governments whose interests are potentially adverse to our national interest.

4.      These records will therefore inform the public about "what their government [has been] up to." *Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 773 (1989).

5.      Defendants have improperly withheld records responsive to the *Post*'s requests.

## PARTIES

6.      Plaintiff, the *Post*, is a news organization based in Washington, D.C.  It publishes the leading daily newspaper, by print circulation, in the nation's capital, as well as the website washingtonpost.com, which typically reaches an audience of more than 80 million unique visitors per month, according to independent auditor comScore.  Since 1936, the *Post* has won 69 Pulitzer Prizes.

7.      Defendant, DOD, is an agency within the meaning of 5 U.S.C. § 552(f)(1).  DOD has possession and control of records requested by the *Post*.

8.      Defendant, the Army, is an agency within the meaning of 5 U.S.C. § 552(f)(1).  The Army has possession and control of records requested by the *Post*.

9.      Defendant, the Navy, is an agency within the meaning of 5 U.S.C. § 552(f)(1).  The U.S. Marine Corps (the "Marines") operates within the Department of the Navy.  10 U.S.C. § 8063(a).  The Navy has possession and control of records requested by the *Post*.

10.      Defendant, the Air Force, is an agency within the meaning of 5 U.S.C. § 552(f)(1). The Air Force has possession and control of records requested by the *Post*.

11.      Defendant, the State Department, is an agency within the meaning of 5 U.S.C. § 552(f)(1).  The State Department has possession and control of records requested by the *Post*.

## JURISDICTION AND VENUE

12.      This action arises under FOIA.  This Court has subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B) & (a)(6)(C)(i). This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

13.      Venue is proper in this judicial district under 5 U.S.C. § 552(a)(4)(B).

## FACTUAL ALLEGATIONS

**The "Foreign Government Employment" Application Process**

14.      The Emoluments Clause of the U.S. Constitution provides that "no person holding any office of profit or trust under [the United States], shall, without the consent of the Congress, accept of any present, emolument, office, or title, of any kind whatever, from any king, prince, or foreign state."  U.S. Const., art. I, § 9, cl. 8.

15.     According to the Department of Justice's Office of Legal Counsel, retired officers of the U.S. military hold an "office of profit or trust" within the scope of the Emoluments Clause because they "are subject to recall to active duty without their consent, and this obligation may be enforced by court martial under the Uniform Code of Military Justice."  *See Applicability of 18 U.S.C. § 219 to Retired Foreign Service Officers*, 11 Op. O.L.C. 67, 69 (1987).

16.     Congress has provided its consent under the Emoluments Clause, as a blanket matter, for retired members of the military to seek "civil employment (and compensation for that employment)" from foreign governments so long as they receive the approval of the Secretary of State and the Secretary of the Army, Navy, or Air Force.  37 U.S.C. § 908(a)-(b).

17.     Each branch of the military therefore manages an application process to receive such approval.  *See Summary of Emoluments Clause Restrictions*, DOD Standards of Conduct Office, https://dodsoco.ogc.osd.mil/Portals/102/summary_emoluments_clause_restrictions.pdf.

18.     The State Department's Office of State-Defense Integration "manages the State Department's approval process for requests by retired U.S. uniformed-services personnel seeking employment with a foreign government," which "begins following approval of the request by the relevant branch of the Armed Services."  *See About Us*, State Department Office of State-Defense Integration, https://www.state.gov/bureau-of-political-military-affairs-office-of-state-defense-integration-pm-sdi/.

19.     In February 2020, DOD reported to Congress that, from 2015 through 2019, the Air Force, Army, Navy, and Marines issued a total of 68 approvals for foreign government employment "for a retired member of the armed forces in general or flag officer grade."  A true and correct copy of DOD's report to Congress is attached hereto as Exhibit 1.

20.     General officers and flag officers "hold the most visible and important military positions in the Department of Defense, including the Chairman of the Joint Chiefs of Staff, the chiefs of the four military services, and the combatant commanders."  *See General and Flag Officers in the U.S. Armed Forces: Background and Considerations for Congress*, Congressional Research Service (Feb. 1, 2019), https://fas.org/sgp/crs/natsec/R44389.pdf.

**Foreign Government Employment Records Previously Obtained Through FOIA**

21.     In August 2017, the Project On Government Oversight ("POGO") reported that, through FOIA, it had obtained the names of "seven retired Marine Corps officers . . . who sought and obtained permission from the Marine Corps to be paid to work on behalf of foreign governments and companies after they retired."  *See* Mandy Smithberger, *Generally Concerning*, POGO (Aug. 2, 2017), https://www.pogo.org/investigation/2017/08/generally-concerning/.

22.     Those officers included President Trump's first Secretary of Defense, James Mattis, President Trump's second White House Chief of Staff, John Kelly, President Obama's first National Security Advisor, James L. Jones, and the 35th Commandant of the Marine Corps, James F. Amos, each of whom retired from the Marines at the rank of four-star general.  *Id.*

23.     Of particular note, according to the records obtained by POGO, General Jones received permission in April 2017 to work as an "Independent Security Consultant" for "the Minister of Defense for the Kingdom of Saudi Arabia."  *Id.*  Since January 2015, the Minister of Defense for the Kingdom of Saudi Arabia has been Prince Mohammed Bin Salman ("MBS").

24.     In October 2018, MBS personally approved the assassination of journalist Jamal Khashoggi.  *See Assessing the Saudi Government's Role in the Killing of Jamal Khashoggi*, Office of the Dir. of Nat'l Intel. (Feb. 26, 2021), https://www.dni.gov/index.php/newsroom/reports-publications/reports-publications-

2021/item/2186-assessing-the-saudi-government-s-role-in-the-killing-of-jamal-khashoggi.  At

the time of his assassination, Khashoggi was a contributor to the *Post*'s Global Opinions section.

*See, e.g.*, *Read Jamal Khashoggi's columns for The Washington Post*,

https://www.washingtonpost.com/news/global-opinions/wp/2018/10/06/read-jamal-khashoggis-

columns-for-the-washington-post/.

**The *Post*'s FOIA Requests**

25.      On October 9, 2020, the *Post* submitted a FOIA request to the Air Force seeking

"[a]ll application records for Foreign Government Employment (FGE) from retired or former

military personnel in your service" from January 1, 2015 to present.  A true and correct copy of

the *Post*'s request is attached hereto as Exhibit 2.

26.      On October 12, 2020, the *Post* submitted a FOIA request to the Air Force Office

of Inspector General ("OIG") seeking "[a]ll records, including but not limited to Inspector

General investigations, mentioning Foreign Government Employment (FGE) of retired or former

military personnel" from January 1, 2015 to present.  A true and correct copy of the *Post*'s

request is attached hereto as Exhibit 3.

27.      On October 9, 2020, the *Post* submitted a FOIA request to the Navy seeking "[a]ll

application records for Foreign Government Employment (FGE) from retired or former military

personnel in your service" from January 1, 2015 to present.  A true and correct copy of the *Post*'s

request is attached hereto as Exhibit 4.

28.      On October 12, 2020, the *Post* submitted a FOIA request to the Navy OIG

seeking "[a]ll records, including but not limited to Inspector General investigations, mentioning

Foreign Government Employment (FGE) of retired or former military personnel" from January

1, 2015 to present.  A true and correct copy of the *Post*'s request is attached hereto as Exhibit 5.

29.     On October 9, 2020, the *Post* submitted a FOIA request to the Army seeking "[a]ll application records for Foreign Government Employment (FGE) from retired or former military personnel in your service" from January 1, 2015 to present.  A true and correct copy of the *Post*'s request is attached hereto as Exhibit 6.

30.     On October 12, 2020, the *Post* submitted a FOIA request to the Army OIG seeking "[a]ll records, including but not limited to Inspector General investigations, mentioning Foreign Government Employment (FGE) of retired or former military personnel" from January 1, 2015 to present.  A true and correct copy of the *Post*'s request is attached hereto as Exhibit 7.

31.      On October 9, 2020, the *Post* submitted a FOIA request to the Marines seeking "[a]ll application records for Foreign Government Employment (FGE) from retired or former military personnel in your service" from January 1, 2015 to present.  A true and correct copy of the *Post*'s request is attached hereto as Exhibit 8.

32.     On October 12, 2020, the *Post* submitted a FOIA request to the Marines OIG seeking "[a]ll records, including but not limited to Inspector General investigations, mentioning Foreign Government Employment (FGE) of retired or former military personnel" from January 1, 2015 to present.  A true and correct copy of the *Post*'s request is attached hereto as Exhibit 9.

33.     On October 12, 2020, the *Post* submitted a FOIA request to the DOD OIG seeking "[a]ll records, including but not limited to Inspector General investigations, mentioning Foreign Government Employment (FGE) of retired or former military personnel" from January 1, 2015 to present.  A true and correct copy of the *Post*'s request is attached hereto as Exhibit 10.

34.     On October 13, 2020, the *Post* submitted a FOIA request to the State Department seeking "[a]ll records related to [FGE] Requests," including "all State Department approvals and

denials of FGE requests," from January 1, 2015 to present.  A true and correct copy of the *Post*'s

request is attached hereto as Exhibit 11.

**The Agencies' Responses**

35.     On October 26, 2020, the Air Force responded to the *Post*'s request, stating that

"[t]he records you seek are maintained at the HQ Air Force (AF) Level" and informing the *Post*

that its request was being transferred to that office, which would make a "determination . . . on

whether any records are available and if they will be released or withheld from disclosure."  A

true and correct copy of that response is attached hereto as Exhibit 12.

36.     On October 28, 2020, the Navy OIG responded to the *Post*'s request, stating that

it had "failed to locate" any responsive records and informing the *Post* that its request was being

transferred to "the Navy Personnel Command, which may possess such records."  A true and

correct copy of that response is attached hereto as Exhibit 13.

37.     On February 1, 2021, the DOD OIG responded to the *Post*'s request, stating that it

had "found documents responsive to [the] request," but that it "determined that the United States

Air Force (USAF) is the release authority for those documents," and therefore it "referred those

pages" to the Air Force "for processing and direct response to [the *Post*]."  A true and correct

copy of that response is attached hereto as Exhibit 14.

38.     On March 31, 2021, the Navy responded to the *Post*'s request, producing 494

pages of records with redactions under Exemptions 4, 5, and 6, and stating that "[a] second and

final batch of responsive documentation will be provided to [the *Post*] on or near the end of May

2021."  A true and correct copy of that response letter is attached hereto as Exhibit 15.

39.     Defendants have not substantively responded to any of the *Post*'s other requests.

**The *Post*'s Administrative Appeals**

40.     Though under no obligation to do so, the *Post* appealed the constructive denial of its request to the DOD OIG on February 24, 2021.  A true and correct copy of the *Post*'s appeal is attached hereto as Exhibit 16.

41.     On February 25, 2021, the DOD OIG responded to the *Post*'s administrative appeal, stating that "lack of timeliness of the [agency's] response" is not "an adverse determination" that can be appealed pursuant to DOD's FOIA regulations.  A true and correct copy of that response is attached hereto as Exhibit 17.

42.     A FOIA requestor like the *Post*, however, may file a lawsuit against an agency that does not provide a substantive determination within the statutory deadline under FOIA:

> We find that the . . . constructive exhaustion provision of FOIA, 5 U.S.C.
> § 552(a)(6)(C), permits a requester to bring suit in federal district court only if he
> has not yet received a determination from the agency on his request. If he has
> received an adverse determination before bringing suit, he must pursue the matter
> through the agency appeal process, set out in 5 U.S.C. § 552(a)(6)(A)(ii).

*Oglesby v. Dep't of Army*, 920 F.2d 57, 71 (D.C. Cir. 1990).  An administrative appeal is required only when, and a lawsuit is premature only if, the agency's response to the FOIA request "determine[s] and communicate[s] the scope of the documents it intends to produce and withhold, and the reasons for withholding any documents" and also "inform[s] the requester that it can appeal whatever portion of the 'determination' is adverse."  *CREW v. FEC*, 711 F.3d 180, 188 (D.C. Cir. 2013).

43.     Though under no obligation to do so, the *Post* appealed the constructive denial of its request to the Air Force on February 24, 2021.  A true and correct copy of the *Post*'s appeal is attached hereto as Exhibit 18.

44.     Though under no obligation to do so, the *Post* appealed the constructive denial of its request to the Air Force OIG on February 24, 2021.  A true and correct copy of the *Post*'s appeal is attached hereto as Exhibit 19.

45.     Though under no obligation to do so, the *Post* appealed the constructive denial of its request to the Army on February 24, 2021.  A true and correct copy of the *Post*'s appeal is attached hereto as Exhibit 20.

46.     Though under no obligation to do so, the *Post* appealed the constructive denial of its request to the Army OIG on February 24, 2021.  A true and correct copy of the *Post*'s appeal is attached hereto as Exhibit 21.

47.     Though under no obligation to do so, the *Post* appealed the constructive denial of its request to the Marines on February 24, 2021.  A true and correct copy of the *Post*'s appeal is attached hereto as Exhibit 22.

48.     Though under no obligation to do so, the *Post* appealed the constructive denial of its request to the Marines OIG on February 24, 2021.  A true and correct copy of the *Post*'s appeal is attached hereto as Exhibit 23.

49.     Though under no obligation to do so, the *Post* appealed the constructive denial of its request to the State Department on February 24, 2021.  A true and correct copy of the *Post*'s appeal is attached hereto as Exhibit 24.

50.     All of the Defendants have failed in whole or in part to produce records responsive to the *Post*'s FOIA requests.

51.     All of the Defendants have failed in whole or in part to inform the *Post* as to the scope of the records that they will produce in response to the *Post*'s FOIA requests or to provide a timetable for such production.

52.     All of the Defendants have failed in whole or in part to inform the *Post* as to the scope of responsive records that they will withhold pursuant to any FOIA exemption(s).

**CLAIMS FOR RELIEF**[1]

**COUNT I**
**Declaratory and Injunctive Relief:**
**Constructive Denial in Violation of FOIA, 5 U.S.C. § 552**

53.     The *Post* realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

54.     FOIA provides this Court with "jurisdiction to enjoin [Defendants] from withholding agency records and to order the production of any agency records improperly withheld from [the *Post*]."  5 U.S.C. § 552(a)(4)(B).

55.     The records the *Post* seeks are agency records within Defendants' control.

56.     FOIA requires that within 20 working days of receiving a FOIA request, an agency must notify a requester of, *inter alia*, the scope of the documents that the agency will produce and the scope of the documents that the agency plans to withhold under any FOIA exemptions. *See* 5 U.S.C. § 552(a)(6)(A)(i).

57.     Defendants received the *Post*'s requests on October 9-13, 2020.  Exs. 2-11.

58.     Pursuant to FOIA, Defendants were required to respond to the *Post*'s requests by November 10, 2020.  5 U.S.C. § 552(a)(6)(A)(i).

59.     To date, however, only one of the Defendants has made and communicated to the *Post* a "determination" on *any* of the requests within the meaning of 5 U.S.C. § 552(a)(6)(A)(i), and even that agency, the Navy, has failed to do so for *all* of the requests it received.

_____

[1] The *Post*'s claims against the Navy in this initial Complaint are limited to the *Post*'s requests to the Marines and the Marines OIG.  *See* Exs. 8-9, 22-23.

60.     There is no basis under FOIA to withhold, in whole or in part, the records requested by the *Post*.  Defendants have wrongfully withheld agency records in violation of FOIA.

61.     The *Post* requests a declaratory judgment that Defendants have violated FOIA and that the *Post* is entitled to immediately receive the documents referenced above.

62.     The *Post* further requests that, pursuant to 5 U.S.C. § 552(a)(4)(B), the Court issue an injunction directing Defendants to produce the requested agency records in full and setting a deadline for compliance.

**COUNT II**
**Declaratory and Injunctive Relief:**
**Constructive Denial of Administrative Appeals in Violation of FOIA, 5 U.S.C. § 552**

63.     The *Post* realleges and incorporates by reference all previous paragraphs as if fully set forth herein.

64.     FOIA provides this Court with "jurisdiction to enjoin [Defendants] from withholding agency records and to order the production of any agency records improperly withheld from [the *Post*]."  5 U.S.C. § 552(a)(4)(B).

65.     FOIA requires that within 20 working days of receiving a FOIA appeal, an agency must notify a requester of, *inter alia*, the scope of the documents that the agency will produce and the scope of the documents that the agency plans to withhold under any FOIA exemptions. *See* 5 U.S.C. § 552(a)(6)(A)(ii).

66.     The records that are the subject of the *Post*'s appeals are agency records within Defendants' control.

67.     Defendants received the *Post*'s appeals on February 24, 2021.  Exs. 16, 18-24.

68.     Pursuant to FOIA, Defendants were required to make and communicate to the *Post* a "determination" on its appeals no later than March 24, 2021.  5 U.S.C. § 552(a)(6)(A)(ii).

69.     To date, Defendants have not made and communicated to the *Post* a "determination" on any of its appeals within the meaning of 5 U.S.C. § 552(a)(6)(A)(ii).

70.     There is no basis to withhold, in whole or in part, the records that are the subject of the *Post*'s appeals.  Defendants have wrongfully withheld those records in violation of FOIA.

71.     The *Post* requests a declaratory judgment that Defendants have violated FOIA and that the *Post* is entitled to immediately receive the documents referenced above.

72.     The *Post* further requests that, pursuant to 5 U.S.C. § 552(a)(4)(B), the Court issue an injunction directing Defendants to produce all of the requested agency records in full and setting a deadline for compliance.

## REQUEST FOR RELIEF

WHEREFORE, the *Post* respectfully requests that this Court:

A.     Declare Defendants' failure to provide responsive records unlawful under FOIA;

B.     Enter an injunction, pursuant to 5 U.S.C. § 552(a)(4)(B), directing Defendants to make the requested records available to the *Post*, unredacted, and without further delay, and setting a deadline for compliance;

C.     Provide for expeditious proceedings in this action;

D.     Award the *Post* its costs and reasonable attorneys' fees incurred in this action pursuant to 5 U.S.C. § 552(a)(4)(E); and

E.     Grant such other and further relief as the Court may deem just and proper.

 Dated:  April 13, 2021              Respectfully submitted,

                                    BALLARD SPAHR LLP

                                    /s/ *Charles D. Tobin*
                                    Charles D. Tobin (#455593)
                                    Maxwell S. Mishkin (#1031356)
                                    Emmy Parsons (#7538151)
                                    1909 K Street, NW, 12th Floor

Washington, DC 20006
Tel: (202) 661-2200 | Fax: (202) 661-2299
tobinc@ballardspahr.com
mishkinm@ballardspahr.com
parsonse@ballardspahr.com

*Counsel for Plaintiff WP Company LLC*
*d/b/a The Washington Post*