UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| WP COMPANY LLC d/b/a THE WASHINGTON POST, | ) ) ) |  |
| Plaintiff, | ) ) ) |  |
| v. | ) ) | Civil Action No. 21-1025 (APM) |
| U.S. DEPARTMENT OF DEFENSE, *et al.*, | ) ) ) |  |
| Defendants. | ) ) ) |  |

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Acting Chief, Civil Division

PAUL CIRINO, D.C. Bar #1684555
Assistant United States Attorney
U.S. Attorney's Office for the District of Columbia
555 4th Street, N.W.
Washington, D.C.  20530
Telephone: (202) 252-2529
paul.cirino@usdoj.gov

*Counsel for Defendants*

Dated:  December 14, 2021

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................ii

FACTUAL BACKGROUND ................................................................................................ 1

STANDARD OF REVIEW ................................................................................................... 1

ARGUMENT ........................................................................................................................ 2

I.       DEFENDANTS PERFORMED REASONABLE SEARCHES. ..................................... 3

      A.    The Defense Inspector General's Office Conducted Reasonable Searches .............. 5

      B.    The Air Force Conducted Reasonable Searches. ...................................................... 7

            1.   Request for Investigative Records to the Office of the Inspector General ......... 7

            2.   Request for Application Records to the Air Force Personnel Center. ................ 8

      C.    The Army Conducted Reasonable Searches. ........................................................... 8

            1.   Request for Investigative Records to the Office of the Inspector General ......... 9

            2.   Request for Application Records to the Army Human Resources Command .... 9

      D.    The Marine Corps Conducted Reasonable Searches. ............................................. 10

            1.   Request for Investigative Records to the Office of the Inspector General ....... 10

            2.   Request for Application Records to the Marine Corps .................................... 11

      E.    The State Department Produced Records Pursuant to an Agreement
           with Plaintiff. ......................................................................................................... 12

II.     DEFENDANTS INDENTIFIED AND PRODUCED RESPONSIVE, NON-EXEMPT
      AGENCY RECORDS. ............................................................................................... 12

      A.    The Army and Navy's Exemption 5 Withholdings Are Appropriate. ..................... 13

            1.   The Attorney-Client Privilege ......................................................................... 13

             2.   The Deliberative Process Privilege .................................................................. 14

             3.   The Army and Navy Appropriately Withheld Legal Memoranda .................... 15

      B.    Defendants' Withholdings Based on Exemptions 6 and 7(C) Are Appropriate. .... 17

            1.   The Application and Investigative Records Constitute "Personnel"
               or "Similar" Files .......................................................................................... 18

            2.   Defendants' Exemption 6 Withholdings of Private Citizens' Personal
               Information Struck an Appropriate Balance. .................................................. 18

3.  Defendants Properly Withheld the Names, Contact Information, and Handwritten Signatures of Current Defense and State Department Personnel Pursuant to Exemptions 6 and 7(C). .............................................................25

4.  The Air Force and the Defense Inspector General's Office Properly Withheld Personal Information Pursuant to Exemption 7(C). .........................27

C.  The State Department Appropriately Withheld Sensitive Commercial Information Under Exemption 4. ...........................................................................29

III.  DEFENDANTS COMPLIED WITH FOIA'S FORSEEABLE HARM REQUIREMENT. ..................................................................................................31

IV.  DEFENDANTS COMPLIED WITH FOIA'S SEGREGABILITY REQUIREMENT. ..32

CONCLUSION .............................................................................................................. .. 33

# TABLE OF AUTHORITES

**Cases**                                                                     **Page(s)**

*Amadis v. Dep't of State*,
    971 F.3d 364 (D.C. Cir. 2020) ............................................................... 31

*Amnesty Int'l USA v. CIA*,
    728 F. Supp. 2d 479 (S.D.N.Y. 2010) ................................................... 21

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ............................................................................... 1

*Armstrong v. Exec. Off. of the President*,
    97 F.3d 575 (D.C. Cir. 1996) ............................................................... 32

*Beck v. Dep't of Just.*,
    997 F.2d 1489 (D.C. Cir. 1993) ........................................................... 18

*Bell v. Dep't of Def.*,
    Civ. A. No. 16-0959 (RC), 2018 WL 4637005 (D.D.C. Sept. 27, 2018) .............................. 28

*Bloche v Dep't of Defense*,
    370 F. Supp. 3d 40 (D.D.C. 2019) ....................................................... 21

*Brown v. Dep't of Just.*,
    724 F. Supp. 2d 126 (D.D.C. 2010) ..................................................... 5

*Canning v. Dep't of Just.*,
    567 F. Supp. 2d 104 (D.D.C. 2008) ..................................................... 32

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ............................................................................... 2

*Chang v. Dep't of Navy*,
    314 F. Supp. 2d 35 (D.D.C. 2004) ....................................................... 18

*Coastal States Gas Corp. v. Dep't of Energy*,
    617 F.2d 854 (D.C. Cir. 1980) ............................................................. 14

*Consumers' Checkbook Ctr. for the Study of Servs. v. U.S. Dep't of Health & Human Servs.*,
    554 F.3d 1046 (D.C. Cir. 2009) ........................................................... 22

*Ctr. for Pub. Integrity v. Off. of Pers. Mgmt.*,
    Civ. A. No 04-1274 (GK), 2006 WL 3498089 (D.D.C. Dec. 4, 2006) ................................. 27

*Defs. of Wildlife v. Dep't of Interior*,
    314 F. Supp. 2d 1 (D.D.C. 2004) ......................................................... 4

*Defs. of Wildlife v. U.S. Border Patrol*,
    623 F. Supp. 2d 83 (D.D.C. 2009) ....................................................... 4

*Dep't of State v. Wash. Post Co.*,
456 U.S. 595 (1982) ............................................................................................ 18

*Elec. Privacy Info. Ctr. v. Dep't Homeland Sec.*,
384 F. Supp. 2d 100, 117 (D.D.C. 2005) ........................................................... 26

*Fed. Labor Relations Auth. v. U.S. Dep't of Treasury, Fin. Mgmt. Serv.*,
884 F.2d 1446 (D.C. Cir. 1989) ......................................................................... 26

*Fisher v. United States*,
425 U.S. 391 (1976) ............................................................................................ 13

*Food Mktg. Inst. v. Argus Leader Media*,
139 S. Ct. 2365 (2019) ....................................................................................... 29

*Gold Anti-Trust Action Comm., Inc. v. Bd. of Governors of Fed. Reserve Sys.*,
762 F. Supp. 2d 123 (D.D.C. 2011) ..................................................................... 2

*Greenberg v. Dep't of Treasury*,
10 F. Supp. 2d 3 (D.D.C. 1998) ........................................................................... 4

*Hunt v. U.S. Marine Corps*,
935 F. Supp. 46 (D.D.C. 1996) ........................................................................... 23

*In re County of Erie*,
473 F.3d 413 (2d Cir. 2007) ............................................................................... 14

*In re Lindsey*,
148 F.3d 1100 (D.C. Cir. 1998) ......................................................................... 13

*In re Sealed Case*,
737 F.2d 94–99 (D.C. Cir. 1984) ....................................................................... 13

*Jefferson v. Dep't of Justice*,
284 F.3d 172 (D.C. Cir. 2002) ........................................................................... 28

*Jud. Watch, Inc. v. Dep't of Just.*,
365 F.3d 1108 (D.C. Cir. 2004) ......................................................................... 13

*Jud. Watch, Inc. v. Rossotti*,
285 F. Supp. 2d 17 (D.D.C. 2003) ..................................................................... 3-4

*Jurewicz v. U.S. Dep't of Agric.*,
741 F.3d 1326 (D.C. Cir. 2014) ......................................................................... 23

*Kowalczyk v. Dep't of Justice*,
73 F.3d 386 (D.C. Cir. 1996) ............................................................................... 4

*Leopold v. Dep't of Just.*,
Civ. A. No. 19-2796 (JEB), 2021 WL 3128866 (D.D.C. July 23, 2021) ............... 17

*Lepelletier v. Fed. Deposit Ins. Corp.*,
    164 F.3d 37 (D.C. Cir. 1999) ............................................. 18

*Long v. Off. of Pers. Mgmt.*,
    970 F. Supp. 19 (D.D.C. 1997) ...................................... 26-27

*Lurie v. Dep't of the Army*,
    970 F. Supp. 19 (D.D.C. 1997) ........................................ 28

*Marks v. Dep't of Just.*,
    578 F.2d 261 (9th Cir. 1978) ............................................ 4

*Matsushita Elec. Indus. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ....................................................... 1

*Mead Data Cent., Inc. v. Dep't of Air Force*,
    566 F.2d 242 (D.C. Cir. 1977) ......................................... 32

*Mittleman v. Office of Personnel Mgmt.*,
    76 F.3d 1240 (D.C. Cir. 1996) ......................................... 28

*Multi Ag Media LLC v. U.S. Dep't of Agric.*,
    515 F.3d 1224 (D.C. Cir. 2008) ....................................... 23

*Nat'l Ass'n of Home Builders v. Norton*,
    309 F.3d 26 (D.C. Cir. 2002) .......................................... 15

*Nat'l Ass'n of Retired Fed. Emps. v. Horner*,
    879 F.2d 873 (D.C. Cir. 1989) ......................................... 29

*Nat'l Sec. Archive v. CIA*,
    752 F.3d 460 (D.C. Cir. 2014) ......................................... 14

*NLRB v. Sears, Roebuck & Co.*,
    421 U.S. 132 (1975) ...................................................... 13

*Oglesby v. Dep't of Army*,
    920 F.2d 57 (D.C. Cir. 1990) ....................................... 4, 10

*Perrin v. United States*,
    444 U.S. 37 (1979) ....................................................... 30

*Pub. Citizen Health Research Grp. v. FDA*,
    704 F.2d 1280 (D.C. Cir. 1983) ....................................... 29

*Pub. Emps. for Env't Resp. v. EPA*,
    211 F. Supp. 3d 227 (D.D.C. 2016) ................................... 13

*Rockwell Int'l Corp. v. Dep't of Just.*,
    235 F.3d 598 (D.C. Cir. 2001) ......................................... 13

*Rural Hous. Alliance v. Dep't of Agric.*,
    498 F.2d 73 (D.C. Cir. 1974) ........................................................................ 28

*SafeCard Servs., Inc. v. SEC*,
    926 F.2d 1197 (D.C. Cir. 1991) ................................................................. 3, 5

*Savage v. Dep't of Navy*,
    Civ. A. No. 19-2983 (ABJ), 2021 WL 4078669 (D.D.C. Sept. 8, 2021) ............... 21

*Schrecker v. DOJ*,
    349 F.3d 657 (D.C. Cir. 2003) ....................................................................... 5

*Seife v. Department of State*,
    298 F. Supp. 3d 592 (S.D.N.Y. 2018) ........................................................... 21

*Steinberg v. Dep't of Just.*,
    23 F.3d 548 (D.C. Cir. 1994) ......................................................................... 5

*Students Against Genocide v. Dep't. of State*,
    257 F.3d 828 (D.C. Cir. 2001) ....................................................................... 2

*Sussman v. U.S. Marshals Serv.*,
    494 F.3d 1106 (D.C. Cir. 2007) ................................................................... 33

*Truitt v. Dep't of State*,
    897 F.2d 540 (D.C. Cir. 1990) ....................................................................... 4

*Upjohn Co. v. United States*,
    449 U.S. 383 (1981) .................................................................................... 13

*Valencia-Lucena v. U.S. Coast Guard*,
    180 F.3d 321 (D.C. Cir. 1999) ....................................................................... 4

*Vietnam Veterans of Am. Conn. Greater Hartford Chapter 120 v. Dep't of Homeland Sec.*,
    8 F. Supp. 3d 188 (D. Conn. 2014) .............................................................. 26

*Walston v. Dep't of Def.*,
    238 F. Supp. 3d 57 (D.D.C. 2017) ............................................................... 27

*Weisberg v. Dep't of Just.*,
    627 F.2d 365 (D.C. Cir. 1980) ....................................................................... 5

*Weisberg v. Dep't of Just.*,
    745 F.2d 1476 (D.C. Cir. 1984) ............................................................... 4, 10

*Weisberg v. U.S. Dep't of Justice*,
    705 F.2d 1344 (D.C. Cir. 1983) ............................................................... 2, 3

**Statutes**

5 U.S.C. § 552(a)(8)(A)(i)(I) ................................................................................ 31

5 U.S.C. § 552(b) ............................................................................................... 32

5 U.S.C. § 552(b)(4) .......................................................................................... 29

5 U.S.C. § 552(b)(5) .................................................................................... 13, 14

5 U.S.C. § 552(b)(6) .......................................................................................... 18

5 U.S.C. § 552(b)(7)(C) ..................................................................................... 27

5 U.S.C. Appx. 3 ................................................................................................ 28

37 U.S.C. § 908 ......................................................................................10, 29, 31

37 U.S.C. § 908(a) ...............................................................................................2

37 U.S.C. § 908(b) .............................................................................................. 2

**Rules**

Fed. R. Civ. P. 56(a) ........................................................................................... 1

Fed. R. Civ. P. 56(c)(1)(A) ..................................................................................2

**Other**

U.S. Const., art. I § 9, cl. 8 ................................................................................ 2

Defendants U.S. Department of Defense ("Defense Department"), U.S. Department of the Air Force (the "Air Force"), U.S. Department of the Army (the "Army'), U.S. Department of the Navy (the "Navy"), and U.S. Department of State (the "State Department") respectfully submit this Memorandum of Law in support of Defendants' Motion for Partial Summary Judgment in this Freedom of Information Act ("FOIA") case. This motion involves all claims against the Defense Department, the Air Force, the Army, and the Navy, and claims regarding the Foreign Government Employment letters released to date by the State Department.

## FACTUAL BACKGROUND

Defendant hereby incorporates its Statement of Undisputed Material Facts, the accompanying Declarations of Joanne Collins, Mark Dorgan, Mary Beth Long, Lieutenant Commander Ann Oakes, Major Robert Wald, Susan C. Weetman, and the exhibits attached thereto and submitted herewith.

## STANDARD OF REVIEW

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a genuine issue of material fact exists, the trier of fact must view all facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The nonmoving party must show that the dispute is genuine and material to the case. A "genuine issue" is one whose factual dispute can affect the substantive outcome of the case and is supported by admissible evidence that a reasonable trier of fact could find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The burden on the moving party may be discharged by showing that there is an absence

of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

FOIA cases are typically and appropriately decided on motions for summary judgment. *Gold Anti-Trust Action Comm., Inc. v. Bd. of Governors of Fed. Reserve Sys*., 762 F. Supp. 2d 123, 130 (D.D.C. 2011). In a FOIA action, an agency that moves for summary judgment "bears the burden of showing that there is no genuine issue of material fact, even when the underlying facts are viewed in the light most favorable to the requester." *Weisberg v. Dep't of Just.*, 705 F.2d 1344, 1350 (D.C. Cir. 1983). An agency can meet its burden by submitting declarations or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Summary judgment is justified in a FOIA lawsuit once the agency demonstrates that no material facts are in dispute and, if applicable, that each document that falls within the class requested either has been produced, is unidentifiable, or is exempt from disclosure. *Students Against Genocide v. Dep't of Stat*e, 257 F.3d 828, 833 (D.C. Cir. 2001).

## ARGUMENT

The Emolument Clause of the U.S. Constitution provides that "no person holding any office of profit or trust under [the United States], shall, without the consent of Congress, accept of any present, emolument, office, or title, of any kind whatsoever, from any king, prince, or foreign state." U.S. Const., art. I § 9, cl. 8. Citing the Emoluments Clause, Congress has provided its consent to retired members of the uniformed services "accepting civil employment (and compensation for that employment), or accepting payment for speeches, travel, meals, lodging, or registration fees, or accepting a non-cash award." 37 U.S.C. § 908(a). Congress has further required that the employment or compensation must be approved by "the Secretary concerned" and the Secretary of State. 37 U.S.C. § 908(b).

The FOIA requests at issue in this case relate to applications for foreign government employment by retired members of the military who now are private citizens.  The requests generally fall into two categories.  One category generally seeks "all application records for Foreign Government Employment (FGE) from retired or former military personnel."  Compl. Exs. 2, 6, 8, 11.  The other category requests "all records, including but not limited to Inspector General investigations, mentioning Foreign Government Employment (FGE) of retired or former military personnel."  *Id.* Exs. 3, 5, 7, 9, 10.  The requests included a time frame from January 1, 2015 "until the date this request is processed."[1]

For the following reasons, Defendants' responses to Plaintiff's FOIA request were consistent with FOIA.  Each agency conducted appropriate searches to identify potentially responsive records in the locations in which such records were likely to be found.  Defendants then released the non-exempt, responsive portions of those records to Plaintiff and complied with the statutory obligation to demonstrate foreseeable harm, where applicable, and to segregate between exempt and non-exempt information.  The Court should grant this motion and enter partial summary judgment in favor of Defendants.

## I.      DEFENDANTS PERFORMED REASONABLE SEARCHES.

Under FOIA, an agency must undertake a search that is "reasonably calculated to uncover all relevant documents."  *Weisberg*, 705 F.2d at 1351.  A search is not inadequate merely because it failed to "uncover[] every document extant."  *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991); *see also Jud. Watch, Inc. v. Rossotti*, 285 F. Supp. 2d 17, 26 (D.D.C. 2003) (noting that "[p]erfection is not the standard by which the reasonableness of a

---

[1]      Although the Complaint attaches two requests directed to the Navy, Compl. Exs. 4-5, Plaintiff represents that this action includes no claims based on those requests, *id.* at 11 n.1. Plaintiff has raised claims regarding one of the requests to the Navy in a related action.  *See WP Co. LLC v. Dep't of Air Force*, Civ. A. No. 21-2458 (APM) (complaint filed Sept. 20, 2021).

FOIA search is measured").  It is appropriate for an agency to search for responsive records in

accordance with the manner in which its records systems are indexed.  *Greenberg v. Dep't of*

*Treasury*, 10 F. Supp. 2d 3, 13 (D.D.C. 1998).

       Where agency affidavits assert that a reasonable search was conducted, the agency is

entitled to a presumption of good faith.  *Defs. of Wildlife v. Dep't of Interior*, 314 F. Supp. 2d 1,

8 (D.D.C. 2004).  "An agency fulfills its obligations under FOIA if it can demonstrate beyond

material doubt that its search was 'reasonably calculated to uncover all relevant documents.'"

*Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting *Truitt v.*

*Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)).  FOIA does not require that an agency

search every division or field office on its own initiative in response to a FOIA request if

responsive documents are likely to be in one place.  *Kowalczyk v. Dep't of Just.*, 73 F.3d 386,

388 (D.C. Cir. 1996); *Marks v. Dep't of Just.*, 578 F.2d 261, 263 (9th Cir. 1978).  Nor does the

FOIA require that an agency search every record system.  *Oglesby v. Dep't of Army*, 920 F.2d

57, 68 (D.C. Cir. 1990).

       "To meet its burden, the agency may submit affidavits or declarations that explain in

reasonable detail the scope and method of the agency's search."  *Defs. of Wildlife v. U.S. Border*

*Patrol*, 623 F. Supp. 2d 83, 91 (D.D.C. 2009).  However, "the issue to be resolved is not whether

there might exist any other documents possibly responsive to the request, but rather whether the

search for those documents was adequate."  *Weisberg v. Dep't of Just.*, 745 F.2d 1476, 1485

(D.C. Cir. 1984).  The process of conducting an adequate search for documents requires "both

systemic and case-specific exercises of discretion and administrative judgment and expertise,"

and it is "hardly an area in which the courts should attempt to micromanage the executive

branch." *Schrecker v. Dep't of Just.*, 349 F.3d 657, 662 (D.C. Cir. 2003) (internal quotation marks and citation omitted).

"[T]he sufficiency of the agency's identification or retrieval procedure" must be "genuinely in issue" for summary judgment in the agency's favor to be inappropriate based on the adequacy of the search. *Weisberg v. Dep't of Just.*, 627 F.2d 365, 370 (D.C. Cir. 1980). A plaintiff "cannot rebut the good faith presumption" afforded to an agency's supporting affidavits "through purely speculative claims about the existence and discoverability of other documents." *Brown v. Dep't of Just.*, 724 F. Supp. 2d 126, 129 (D.D.C. 2010) (quoting *SafeCard Servs.*, 926 F.2d at 1200); *accord Steinberg v. Dep't of Just.*, 23 F.3d 548, 552 (D.C. Cir. 1994) (a plaintiff's "mere speculation that as yet uncovered documents may exist does not undermine the finding that the agency conducted a reasonable search for them").

In this case, Defendants' searches were reasonably calculated to identify the agency records requested by Plaintiff.

A.     **The Defense Inspector General's Office Conducted Reasonable Searches.**

In response to Plaintiff's FOIA request, the Defense Inspector General's Office determined that four components were likely to have responsive records: (1) the Office of the Deputy Inspector General for Investigations, which leads the Defense Criminal Investigative Service and has authorization to investigate allegations of criminal and civil violations of federal law; (2) the Office of the Deputy Inspector General for Administrative Investigations, which investigates allegations of misconduct by senior Department officials and allegations of whistleblower reprisal; (3) the Office of Professional Responsibility, which investigates allegations of misconduct by Defense Inspector General's Office employees and military

personnel assigned to that office; and (4) the Office of General Counsel, Employment Law & Ethics.  Dorgan Decl.[2] ¶ 7.

The Defense Criminal Investigative Service searched for records in its Case Reporting and Information Management System, which is the principal reporting system for timely reporting of the Department's investigative activities.  *Id.* ¶ 20.  The agency searched for records using the search terms "Foreign Government Employment," "FGE," and "FGE Former/Retired Military Personnel."  *Id.* ¶ 21.

The Office of the Deputy Inspector General for Administrative Investigations searched for responsive records in its Whistleblower Reprisal Investigations and Investigation of Senior Officials Directorates.  *Id.* ¶ 22.  These components searched for records within the Defense Case Activity Tracking System, which contains information on all incoming allegations to ensure the proper receipt and evaluation of allegations of fraud, waste, abuse, and mismanagement as well as any actions taken as a result of any such inquiries.  *Id.* ¶ 23.  The Whistleblower Reprisals Investigations Directorate used the search terms "Foreign Government Employment," and "Foreign Government Employment of Retired or former Military Personnel."  *Id.* ¶ 24.  The Office of the Investigation of Senior Officials Directorate searched the database using the "wildcard" search terms "Foreign" and "employ," which would identify words that contained those terms.  *Id.* ¶ 25.

In addition, the Office of Professional Responsibility searched its Microsoft Access database, which provides management, receipt, evaluation, documentation, and tracking of all

---

[2]      Citations to "Dorgan Decl." refer to the Declaration of Mark Dorgan, dated December 13, 2021, submitted herewith.

incoming allegations of misconduct.  *Id.* ¶ 27.  That office searched for responsive records in the database by using the search term "Foreign Employment."  *Id.* ¶ 28.

Finally, the Office of General Counsel conducted a search for relevant documents on an electronic shared drive and SharePoint system.  *Id.* ¶ 30.  This office searched these platforms by using the terms "emolument" and "foreign."  *Id.*

Based on these detailed search descriptions, the Court should conclude that the Defense Inspector General's Office complied with FOIA's requirement to undertake searches reasonably calculated to uncover all relevant documents.  In response to Plaintiff's request, each component of the Defense Inspector General's Office that is involved in investigations relating to foreign government employment conducted a search.  The searches employed search terms that were directed to uncover the records sought by Plaintiff.  Under these circumstances, the Defense Inspector General's Office's searches were appropriate.

## B. The Air Force Conducted Reasonable Searches.

The Air Force conducted separate searches for records responsive to the FOIA requests that Plaintiff submitted to this service branch.

### 1. *Request for Investigative Records to the Office of the Inspector General*

In response to Plaintiff's request seeking investigative records from the Air Force Office of the Inspector General, the Air Force searched for responsive records at the Secretary of Air Force Office of the Inspector General, which oversees the Air Force Inspector General Complaints Resolution Program.  Collins Decl.[3] ¶¶ 16-18.  The office searched its electronic files using the search terms "Foreign Government Employment" and "Foreign Government Employment Investigations."  *Id.* ¶ 17.

---

[3]     Citations to "Collins Decl." refer to the Declaration of Joanne Collins, dated December 14, 2021, submitted herewith.

2.     *Request for Application Records to the Air Force Personnel Center*

In response to Plaintiff's request seeking investigative records from the Air Force Personnel Center, that office searched for responsive records in a shared drive with separate folders for the years 2018, 2019, 2020, and 2021.  Collins Decl. ¶ 21.  Within each folder, foreign government employment application packages are filed according to the applicant's last name.  *Id.*

\*     \*     \*

The Air Force's searches were reasonable.  The Air Force Inspector General's Office is the office responsible for investigations relating to foreign government employment, and it searched the relevant database using terms that were designed to identify any responsive records. Similarly, the Air Force Personnel Center, which processes the foreign government applications, identified the folders containing the foreign government employment packages for each year from 2018 through 2021.  These searches were reasonably calculated to identify the records sought by Plaintiff in its FOIA requests.

**C.     The Army Conducted Reasonable Searches.**

The Army conducted reasonable searches in response to the requests submitted by Plaintiff.  Plaintiff's request for investigative records was directed to the Department of the Army Office of the Inspector General.  Wald Decl.[4] ¶ 31. Plaintiff's request for foreign government employment records was submitted to the U.S. Army Human Resources Command. *Id.* ¶ 5.

---

[4]     Citations to "Wald Decl." refer to the Declaration of Major Robert Wald, dated December 14, 2021, submitted herewith.

1.   *Request for Investigative Records to the Office of the Inspector General*

In response to Plaintiff's request seeking investigative records from the Department of the Army Office of the Inspector General, that office conducted a search for responsive records in its Investigation Case Management System and Inspector General Action Request System. Wald Decl. ¶¶ 34-35.  The Investigation Case Management System maintains records of allegations against Army Senior Officials.  *Id.* ¶ 34.  The Inspector General Action Request System contains complaints or requests for assistance presented to the Office of Inspector General.  *Id.* ¶ 35.  The office searched both databases using the following terms: "foreign employment"; "Foreign Government Employment"; "Foreign gov employment/employ/emp"; "Foreign govt employment/employ/emp"; "FGE"; "Emoluments"; "Emoluments"; "work foreign govt/government/gov"; "working overseas"; "work overseas"; "DA Form 7769"; and "overseas employment."  *Id.* ¶ 36.

2.   *Request for Application Records to the Army Human Resources Command*

The Army Human Resources Command responded to Plaintiff's request seeking foreign government employment application records by conducting searches in the Human Resources Command Soldier Management System and the Human Resources Shared Drive.  Wald Decl. ¶ 8.  These document management systems are those likely to contain responsive records because all foreign government employment applications submitted to Human Resources Command are stored in the Command Soldier Management System and Human Resources Command Shared Drive.  *Id.*

*       *       *

The Army's searches were reasonably designed to identify documents responsive to Plaintiff's requests.  The Office of the Inspector General searched both databases that would maintain records of allegations against Army Senior Officials, as well as any complaints, or

requests for assistance.  Multiple search terms were used to locate documents responsive to

Plaintiff's request for investigative files.  The Army Human Resources Command, which

processes foreign government applications, identified all such files on its shared drive.  The

Army therefore has satisfied its search obligations under the statute.  *See Oglesby*, 920 F.2d at

68 ("In order to obtain summary judgment the agency must show that it made a good faith effort

to conduct a search for the requested records, using methods which can be reasonably expected

to produce the information requested.") (citing, among other cases, *Weisberg*, 745 F.2d at 1485).

### D.     The Marine Corps Conducted Reasonable Searches.

Plaintiff submitted two FOIA requests to Marine Corps Headquarters, which determined

to conduct searches as the Office of Inspector General and the Separation and Retirement Branch

of Manpower and Reserve Affairs.  Oakes Decl.[5] ¶¶ 6, 24-26.  The Navy responded to these

requests on behalf of the Marine Corps.

#### 1.     *Request for Investigative Records to the Office of the Inspector General*

In response to Plaintiff's request for investigative records, Marine Corps Headquarters

searched the Office of the Inspector General of the Marine Corps.  Even though that office is

unlikely to have any responsive records because it has no authority to investigate retired

Marines, *id.* ¶ 30, the Office of Inspector General conducted several searches to identify any

responsive records in its possession.  That office searched its document database, which is the

sole repository for the investigations that it conducts.  *Id.* ¶ 22.  That database is searchable only

by complainant, subject's name, or case number—data points that are not useful in locating files

by subject matter or key word.  *Id.* ¶ 23.  Accordingly, the agency's initial searches for "Foreign

Government Employment" and "37 US CODE 908" returned 3,096 cases and 1,421 cases,

---

[5]     Citations to "Oakes Decl." refer to the Declaration of Lieutenant Commander Ann Oakes,
dated December 13, 2021, submitted herewith.

respectively.  *Id.* ¶¶ 24-25.  Those cases were identified because records in the files contained any of the words in the search string not all the words, much less all the words as a single phrase. *Id.* ¶ 23.  Given the technical limitations of the database, the only way to determine whether a case is potentially relevant to Plaintiff's request would be to open each individual file and examine its contents.  *Id.* ¶ 24.  The Office of the Inspector General conducted an additional search for records containing the word "emolument," which the agency determined would yield results most reflective of Plaintiff's request.  *Id.* ¶ 26.  This search for documents was consistent with FOIA because it was reasonably calculated to identify the investigative files requested by Plaintiff.  *Id.* ¶ 27.

For these reasons, the Court should conclude that the Office of the Inspector General of the Marine Corps acted consistently with FOIA with respect to this request.

### 2.   *Request for Application Records to the Marine Corps*

Regarding the foreign government application records, the Separation and Retirement Branch of Manpower and Reserve Affairs at Marine Corps Headquarters searched for responsive records.  That office, which processes all foreign government employment applications submitted by retirees, searched paper files and an electronic drive on its computer network. Oakes Decl. ¶ 7.

This search was reasonable because there were no other locations where responsive material would be located.  The Branch of Manpower and Reserve Affairs is the sole repository for foreign government applications in the possession of this service branch.  *Id.*

E.   **The State Department Produced Records Pursuant to an Agreement with Plaintiff.**

The State Department produced letters reflecting the agency's approvals or denials of foreign government employment application requests (the "FGE Letters").  *See* Weetman Decl.[6] ¶ 10.  After the State Department informed Plaintiff of the existence of the FGE Letters and that they were the subject of another litigation, the parties mutually agreed that the State Department initially would process and produce just the FGE Letters in advance of this briefing.  *See* ECF No. 18 at 2 (Joint Status Report).  The parties agreed that the State Department would suspend processing or producing any other materials potentially responsive to Plaintiff's FOIA request until this Court issues a ruling on these cross-motions for partial summary judgment.  *Id.*  The State Department will process the foreign government employment applications consistent with the Court's ruling on Defendants' Exemption 6 withholdings regarding those records.

## II.   **DEFENDANTS IDENTIFIED AND PRODUCED RESPONSIVE, NON-EXEMPT AGENCY RECORDS.**

As reflected in the accompanying *Vaughn* indexes and supporting declarations, the Army and Navy withheld legal memoranda in their entirety under Exemption 5 and the attorney-client and deliberative process privileges; all Defendants redacted names, addresses, emails, and other personally identifiable information pursuant to Exemptions 6 and/or 7(C); and the State Department redacted confidential commercial information based on Exemption 4.  *See* Collins Decl. Ex. 1; Oakes Decl. Ex. 1; Wald Decl. Ex. 1; Weetman Decl. Ex. A (Defendants' separate *Vaughn* Indexes); *see also* Dorgan Decl. ¶ 44.  For the following reasons, all these withholdings are consistent with FOIA.

---

[6]   Citations to "Weetman Decl." refer to the Declaration of Susan C. Weetman, dated December 14, 2021, submitted herewith.

A.      **The Army's and Navy's Exemption 5 Withholdings Are Appropriate.**

The Army and the Navy properly withheld legal memoranda pursuant to Exemption 5 and the attorney-client and deliberative process privileges.  Exemption 5 allows an agency to withhold "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency."  5 U.S.C. § 552(b)(5). This exemption shields documents of the type that would be privileged in the civil discovery context, including materials protected by the attorney-client privilege and the executive deliberative process privilege.  *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975); *see Jud. Watch, Inc. v. Dep't of Just.*, 365 F.3d 1108, 1113 (D.C. Cir. 2004); *Rockwell Int'l Corp. v. Dep't of Just.*, 235 F.3d 598, 601 (D.C. Cir. 2001).

1.      ***The Attorney-Client Privilege***

The attorney-client privilege protects confidential communications made between clients and their attorneys when the communications are for the purpose of securing legal advice or services.  *See Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981); *Fisher v. United States*, 425 U.S. 391, 403 (1976); *In re Sealed Case*, 737 F.2d 94, 98–99 (D.C. Cir. 1984).  The privilege applies to communications between agency counsel and agency officials and employees who are their clients.  *See, e.g.*, *In re Lindsey*, 148 F.3d 1100, 1104-05 (D.C. Cir. 1998) (per curiam).  Importantly, "[w]ithout protections for attorney-client communications, agency officials might not share information with their counsel in the first place, and would consequently be deprived of sound legal advice," and "[t]his very policy concern grounds FOIA's Exemption 5."  *Pub. Emps. for Env't Resp. v. EPA*, 211 F. Supp. 3d 227, 230 (D.D.C. 2016).  "Exemption 5 is intended to protect the quality of agency decision-making by preventing the disclosure requirement of the FOIA from cutting off the flow of information to agency decision-makers.  Certainly this covers professional advice on legal questions that bear on those

13

decisions." *Id*. at 231; *see also In re County of Erie*, 473 F.3d 413, 418, 422 (2d Cir. 2007)

("Access to legal advice by officials responsible for formulating, implementing and monitoring

governmental policy is fundamental to 'promot[ing] broader public interests in the observance of

law and administration of justice,') (holding that documents "sent for the predominant purpose of

soliciting or rendering legal advice" are covered by the attorney-client privilege) (quoting

*Upjohn*, 449 U.S. at 389).

### 2.   *The Deliberative Process Privilege*

When Congress enacted FOIA Exemption 5 and protected "inter-agency or intra-agency

memorandums or letters that would not be available" in litigation with an agency, 5 U.S.C. §

552(b)(5), it had the deliberative process privilege "specifically in mind."  *Sears*, 421 U.S.

at 150.  That well-established privilege "protect[s] the 'decision making processes of government

agencies'" by withholding "documents 'reflecting advisory opinions, recommendations and

deliberations comprising part of a process by which governmental decisions and policies are

formulated.'"  *Id.*

FOIA's exemption of documents covered by the deliberative process privilege serves

several important purposes.  Protecting internal agency deliberations from disclosure

"encourage[s] the candid and frank exchange of ideas in the agency's decisionmaking process,"

which, in turn, improves "the quality of administrative decisions."  *Nat'l Sec. Archive v. CIA*,

752 F.3d 460, 462 (D.C. Cir. 2014); *see also Sears*, 421 U.S. at 150-51.  The withholding of

deliberative materials also "protect[s] against confusing the issues and misleading the public" by

preventing the release of documents containing "rationales for a course of action which were not

in fact the ultimate reasons for the agency's action."  *Coastal States Gas Corp. v. Dep't of*

*Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980).  The exemption and underlying privilege thereby

ensure that agency officials are "judged by what they decided, not for matters they considered before making up their minds." *Nat'l Sec. Archive*, 752 F.3d at 462.

The deliberative process privilege covers communications that are "pre-decisional" and "deliberative." *Id.* at 463.  To be pre-decisional, the communication "must have occurred before any final agency decision on the relevant matter." *Id.*  To qualify as deliberative, the communication must be "intended to facilitate or assist development of the agency's final position on the relevant issue." *Id.*; *see also Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 39 (D.C. Cir. 2002) ("Material is deliberative if it reflects the give-and-take of the consultative process.")

### 3.  *The Army and Navy Appropriately Withheld Legal Memoranda*

The Army and Navy withheld legal memoranda in full pursuant to Exemption 5 and the attorney-client and deliberative process privileges.

The 127 pages of legal memoranda withheld by the Army were prepared by an Attorney-Advisor, addressed solely to the Army Personnel Records Division, *see* Wald Decl. ¶ 15, and bear the subject heading: "Legal Review—Request for Foreign Government Employment."  The legal reviews contain the lawyer's analysis of the legal sufficiency of applications for foreign government employment to counsel the decision-maker about the legal sufficiency of the application.  *Id.*  The staffing forms that accompany some of these memoranda include the attorney's legal conclusions and recommendations for the Commanding General.  *Id.*

The Navy withheld 14 legal memoranda in their entirety pursuant to Exemption 5 and the attorney-client privilege.  Oakes Decl. ¶ 32.  These records are similar in substance to the Army legal memoranda described above.  Each request to the Marine Corps for approval of foreign government employment is evaluated by Judge Advocates, who draft a legal memorandum to accompany the request through review and decision.  *Id.*  These memoranda contain legal advice

rendered by agency attorneys within the Judge Advocate Division of Marine Corps

Headquarters, advising their principal, the Commandant of the Marine Corps (and his/her staff),

as to whether it is legally advisable to support the applications for foreign government

employment.  *Id.*  The Judge Advocate Division has an attorney-client relationship with the

Commandant of the Marine Corps.  *Id.*  The legal advice contains opinions of counsel based

upon the factual predicate provided by the Deputy Commandant, Manpower and Reserve

Affairs.  *Id.*

There can be no serious dispute that these memoranda constitute attorney-client

communications containing legal analysis and advice.  As such, they are subject to the attorney-

client privilege under the legal authority discussed above.  In addition, these memoranda also

were properly withheld under the deliberative process privilege.  They are plainly "deliberative"

because they contain the drafting lawyer's mental impressions, analysis, and conclusions

regarding the legal sufficiency of those applications, as well as any legal objections to approving

the application, and an analysis of how the attorneys arrived at their determinations.  In addition,

the documents are pre-decisional because their preparation necessarily predates the final decision

by the Army Personnel Records Division and the Commandant of the Marine Corps about

whether to approve or deny the application.

Disclosure of these legal memoranda would foreseeably harm the Army and Navy's

ability to internally deliberate and seek and receive legal advice, which are the interests that the

attorney-client privilege and the deliberative process privilege are intended to protect.  Oakes

Decl. ¶ 33; Wald Decl. ¶ 15.  These legal reviews constitute an integral component of

Defendants' process in assessing and determining whether to grant or deny an application for

foreign government employment.  Release of these legal memoranda would significantly

undermine counsel's ability to communicate confidentially regarding legal matters and other

sensitive personnel matters with the Commanders who make the ultimate decisions.  *See Leopold*

*v. Dep't of Just.*, Civ. A. No. 19-2796 (JEB), 2021 WL 3128866 (D.D.C. July 23, 2021)

(concluding that the agency met the foreseeable harm standard with respect to legal memoranda

by asserting that disclosure would severely inhibit the agency's ability to engage in effective

decision-making").

For these reasons, the Army and Navy's withholding of the legal memoranda under

Exemption 5 were consistent with FOIA.[7]

**B.    Defendants' Withholdings Based on Exemptions 6 and 7(C) Are Appropriate.**

Defendants relied on Exemptions 6 and 7(C) to withhold the names and other information

that could identify retired service members who held a rank of O-6 and lower.  With respect to

former service members who held the rank of O-7 and higher and whose names were released to

Plaintiff, Defendants withheld specific salary information.  Defendants also withheld the names

and certain personal identifiable information of U.S. Government personnel involved in the

application review and adjudication process.  To the extent that any of the above redactions were

made in records compiled for law enforcement purposes, Defendants relied on Exemption 7(C)

in addition to Exemption 6.

---

[7]    Certain records withheld in full under Exemption 5 may contain segregable information that is exempt from disclosure under FOIA Exemption 6, such as information regarding applicants' proposed employment and compensation, information derived from background checks, and the personally identifiable information of the applicant.  If the Court concludes that Exemption 5 is an improper basis for withholding, Defendant reserves the right to withhold portions of these records to the extent that Exemption 6 applies.

### 1.    *The Application and Investigation Records Constitute "Personnel" or "Similar" Files*

Exemption 6 permits the withholding of "personnel and medical files and similar files" when the disclosure of such information "would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  The term "similar files" is broadly construed and includes "[g]overnment records on an individual which can be identified as applying to that individual."  *Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982); *Lepelletier v. Fed. Deposit Ins. Corp.*, 164 F.3d 37, 47 (D.C. Cir. 1999) ("The Supreme Court has interpreted the phrase 'similar files' to include all information that applies to a particular individual.").  Here, Plaintiff has requested investigative files and applications for foreign government employment that pertain to specific individuals and are identified by name.  *See, e.g.*, Collins Decl. ¶ 30.

### 2.    *Defendants' Exemption 6 Withholdings of Private Citizens' Personal Information Struck an Appropriate Balance.*

In assessing the applicability of Exemption 6, courts weigh the "privacy interest in non-disclosure against the public interest in the release of the records in order to determine whether, on balance, the disclosure would work a clearly unwarranted invasion of personal privacy." *Lepelletier*, 164 F.3d at 46; *Chang v. Dep't of Navy*, 314 F. Supp. 2d 35, 43 (D.D.C. 2004). "[T]he only relevant public interest in the FOIA balancing analysis [is] the extent to which disclosure of the information sought would 'she[d] light on an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'"  *Lepelletier*, 164 F.3d at 47; *Beck v. Dep't of Just.*, 997 F.2d 1489, 1492 (D.C. Cir. 1993).  "Information that 'reveals little or nothing about an agency's own conduct' does not further the statutory purpose." *Beck*, 997 F.2d at 1492.

As retired service members, the private citizens discussed in the records implicated by Plaintiff's FOIA requests have a significant private interest in the nondisclosure of their

personally identifiable information, including their names, Social Security numbers and/or specific details about their salary and private sector employment.  Defendants acknowledge, however, that there is a public interest in how the State Department and the military branches evaluate and adjudicate foreign government employment applications.  Defendants have therefore struck an appropriate balance between these public and private interests, consistent with longstanding Defense Department policy and FOIA's Exemption 6 standard.

Though private citizens, certain of the applicants served as senior military officials, known as General and Flag Officers, who must be nominated by the President and confirmed by the Senate.  Officers at that level arguably have opened themselves up to increased public scrutiny.  With respect to the applications submitted by retired service members who held these elevated ranks, Defendants released the applicants' names and only withheld references to Social Security numbers and information regarding their salaries and applicable security clearances. *See* Wald Decl. Ex. 2 (example of released application by retired Brigadier General).

Defendants took a different approach to applications submitted by retired non-senior service members who held ranks no higher than O-6.  Those applicants are not public figures by virtue of their military service, their former military appointments were not subject to presidential appointment or congressional scrutiny, and their military careers have not opened their identities up to public scrutiny.  Defendants therefore redacted those individuals' names and Social Security numbers, along with other text that could reveal their identity.  All remaining information was released.  *See id.* Ex. 3 (example of released application by a retired non-senior service member).

Defendants' distinction between senior and non-senior service members comports with established Defense Department policy and the expectations of service members.  On November

9, 2001, the agency issued a revised policy concerning the withholding of personally identifying information in response to FOIA requests.  Exhibit A at 3-4.  After noting a heightened interest in protecting personally identifiable information, the policy states that it "does not preclude a DoD component's discretionary release of names and duty information of personnel who, by the nature of their position and duties, frequently interact with the public, such as flag/general officers, public affairs officers, or other personnel designated as official command spokespersons."  *Id.* at 4.  Four years later, the Office of the Secretary of Defense reaffirmed this distinction, again, as to current Defense Department personnel.  *Id.* at 1-2.  On September 1, 2005, the Defense Department augmented the 2001 policy, instructing that, "[i]n general, release of information on [department] personnel will be limited to the names, official titles, organizations, and telephone numbers for personnel only at the office director level or above, provided a determination is made that disclosure does not raise security or privacy concerns."[8] *Id.* at 1.

These longstanding policies demonstrate that the Defense Department has for at least 20 years drawn a distinction between General and Flag Officers and lower ranked officials and has acknowledged that non-senior officials have a heightened privacy interest in their personal information.  Maintaining the distinction between General and Flag Officers and lower-ranked service members within the context of this FOIA litigation therefore comports with the expectations that retired service members would have regarding their privacy when submitting a foreign government employment application to their former service branch.

---

[8]     Notably, the Defense Department's 2001 and 2005 policies were conceived with an eye to active members of the armed forces.  The privacy interests recognized by the agency in distinguishing between senior and non-senior military officials only grow more pronounced when considered in the context of retired service members who are now private citizens.

Courts have recognized the same demarcation between General and Flag Officers and their non-senior counterparts, including in FOIA cases addressing Exemption 6.  For example, in *Seife v. Department of State*, 298 F. Supp. 3d 592, 628 (S.D.N.Y. 2018), the State Department withheld the names of lower-level Defense Department employees on the ground that the Department's "practice is to withhold any personally identifying information of its members who hold the military rank of Colonel or below, or are otherwise ranked on the General Schedule at GS-15 or lower."  The *Seife* court credited the agency's position on this point.  *Id.*; *see also Amnesty Int'l USA v. CIA*, 728 F. Supp. 2d 479, 524-25 (S.D.N.Y. 2010) (finding that the balancing of public and private interests weighed in favor of the withholding of personal information of Defense Department "personnel below the officer-director level, or officers below the rank of Colonel").

Courts in this District have recognized the same principle.  *See, e.g.*, *Bloche v Dep't of Defense*, 370 F. Supp. 3d 40, 57 n.6 (D.D.C. 2019) (approving the agency's withholding, based on Exemption 6, of "the names of non-senior military interrogators and other individuals"); *Savage v. Dep't of Navy*, Civ. A. No. 19-2983 (ABJ), 2021 WL 4078669, at *8-10 (D.D.C. Sept. 8, 2021) (deeming "appropriate" an agency's distinction between flag-level officers and other designated positions for FOIA purposes, and holding that "[o]ne can serve the [public] interest . . . by revealing what the *agency* did" "without revealing the names of every individual" involved in an agency action).

Notably, Plaintiff's own pleading distinguishes between senior and non-senior retired service members and focuses only on the former in defining the public interest to be served by its FOIA requests.  *See* Compl. ¶¶ 3 (identifying the public interest relevant to its requests as "lend[ing] transparency to the process by which *senior service members* seek and receive [FGE

approval]"; 20 (noting that *Flag and General Officers* "hold the most visible and important military positions in the Department of Defense"); *see also id.* ¶¶ 19-24 (identifying Flag and General Officers as the focus of Plaintiff's FOIA requests and citing reports about foreign government employment approvals issued to the most senior Defense Department officials) (emphases added).

Defendants' differing Exemption 6 redaction schemes with respect to former General and Flag Officers on the one hand, and non-senior retired military officials on the other, are also internally consistent, reasonable, and in accord with the balancing test required under Exemption 6 of the FOIA.  As noted above, Defendants' redaction of all information that could be used to identify former officials ranked O-6 and below comports with longstanding Defense Department policy and practice, the expectations of former service branch members, and existing caselaw both within and outside this Circuit.  But because those applicants' identities were obscured, Defendants released additional information about their salary and employment information the release of which, when not tied to a specific applicant's identity, was unlikely to implicate a significant privacy interest.

In the case of General and Flag Officers, on the other hand, Defendants redacted sensitive salary and employment information the release of which, when tied to an applicant's identity, could result in embarrassment or harassment.  The proposition that private citizens have a significant privacy interest in their salary information is well-supported.  The D.C. Circuit has recognized that it has "consistently held that an individual has a substantial privacy interest under FOIA in his financial information, including income." *Consumers' Checkbook Ctr. for the Study of Servs. v. Dep't of Health & Human Servs.*, 554 F.3d 1046, 1050-51 (D.C. Cir. 2009) (concluding that data that would reveal the total Medicare payments received by a physician for

covered services implicated those physicians' substantial privacy interests). Indeed, a substantial privacy interest is found even when information that itself does not constitute financial information but could reveal a private citizen or entity's financial status when combined with other data. *See Jurewicz v. Dep't of Agric.*, 741 F.3d 1326, 1332 (D.C. Cir. 2014) (affirming district court's finding that there is a "non-negligible, limited privacy interest" in information related to dog breeders' gross sales under Exemption 6 privacy interest analysis); *Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1230 (D.C. Cir. 2008) (substantial privacy interest in disclosure of a farm's reported acreage and the "number and width of rows of tobacco" because it "'may provide a snapshot' of a farm's financial circumstances and 'shed[ ] light on the financial condition of the farmer'") (citation omitted). The salary information contained in the application forms and related records plainly implicates a substantial privacy interest of the former senior military officials when tied to those officials' identities.

Defendants also justifiably withheld the security clearances once held by former General and Flag Officers, since release of that information substantially implicates those individuals' privacy interests when tied to their identity. Revealing such information would potentially expose the programs or operations to which the individual was assigned during his military career. The former service members have a substantial interest in the nondisclosure of such confidential employment information. *See Bell v. Dep't of Def.*, Civ. A. No. 16-0959 (RC), 2018 WL 4637005, at *14-15 (D.D.C. Sept. 27, 2018) (involving a request for documents for other employees' security clearances); *Hunt v. Marine Corps*, 935 F. Supp. 46, 53-54 (D.D.C. 1996) (finding that a public figure and candidate for the U.S. Senate had a "substantial" privacy interest in maintaining \the confidentiality of his personal data, including his security clearances

and deployment record.).  For these reasons, the former service members' security clearance information in this case is substantial for purposes of Exemption 6 balancing.

Defendants' meticulous, nuanced, and carefully constructed Exemption 6 redaction scheme also takes into consideration the public interest at play in this litigation.  Plaintiff defined that public interest in all its FOIA requests as "inform[ing] of the public debate about [the] interplay between U.S. national security officials and foreign governments."  Compl. Exs. 2-12. Plaintiff's definition is hard to square with the materials actually requested by Plaintiff and produced by Defendants, which consist primarily of the private citizen applicants' biographical information, employment history, and prospective foreign employment plans.  But in any event, Defendants acknowledge that the public has an interest in transparency regarding how they have processed applications for foreign government employment, and Defendants have vindicated that public interest by producing the relevant records with the most limited redactions possible under the circumstances.  Based on the information disclosed by Defendants, a reader of the released records will be able to understand the nature of the applications and whether they were granted or denied by the U.S. Government.

For example, Defendants have disclosed the applications of the retired General and Flag Officers, withholding only their security clearances and specific salary and employment information.  Wald Decl. Ex. 2.  Regarding the retired lower-ranking officials, Defendants redacted only the name and other identifying text.  *Id.* Ex. 3.  The information released by the Army, Navy, and Air Force therefore allows a reader to understand the former rank of the retired official who made the application and general information about the prospective foreign government employment.  In addition, the FGE Letters released by the State Department allow the reader to determine whether the application was granted or denied.  Weetman Decl. Ex. D.

This information is more than sufficient to inform Plaintiff and the public about how Defendants process and adjudicate military retirees' foreign government employment requests.

Defendants' Exemption 6 redactions strike a careful and considered balance between the significant privacy interests of private citizens on one side of the scale, and the public interest in understanding Defendants' foreign government employment adjudication processes, on the other.  Under these circumstances, it would constitute a clearly unwarranted invasion of privacy to reveal the specific salary, employment details, and security clearances of the former General and Flag Officers or to identify the former lower-level military officials whose salary and other identifiable information has been disclosed.  And in any event, the information segregated and released by Defendants speaks to and vindicates the relevant public interests at play.  The Court should therefore grant summary judgment in Defendants' favor with respect to their Exemption 6 withholdings.

> **3.    *Defendants Properly Withheld the Names, Contact Information, and Handwritten Signatures of Current Defense and State Department Personnel Pursuant to Exemptions 6 and 7(C).***

In addition to the former non-senior service members who submitted foreign government employment applications, Defendants have also redacted the names of lower-ranked Defense Department and State Department employees who processed the applications, as well as contact information and handwritten signatures associated with all Defense Department and State Department employees, regardless of their rank or title.  *See* Collins Decl. Ex. 1; Oakes Decl. Ex. 1; Wald Decl. Ex. 1; Weetman Decl. Ex. A (Defendants' separate *Vaughn* Indexes); *see also* Dorgan Decl. ¶ 44.

The attached declarations establish that the release of the identities of lower-ranked DOD and State Department employees would compromise a substantial privacy interest:  It would subject those who are line-level workers to a serious risk of unwarranted harassment.  *See*

*Vietnam Veterans of Am. Conn. Greater Hartford Chapter 120 v. Dep't of Homeland Sec.*, 8 F. Supp. 3d 188, 230-31 (D. Conn. 2014) (noting that "[c]ourts routinely hold that lower-level DOD employees have more than a *de minimis* interest in not having their names disclosed"); *accord Fed. Labor Relations Auth. v. U.S. Dep't of Treasury, Fin. Mgmt. Serv.*, 884 F.2d 1446, 1452-53 (D.C. Cir. 1989) (holding that "federal employees[] have privacy interests in their names and home address that must be protected" and that, "[i]n analysing their privacy interest," the court should "consider[] the nature and scope of the privacy invasions that would flow from disclosure"). In fact, the Weetman Declaration describes an instance "in which a working-level Department employee was contacted directly by counsel for an opposing party in litigation against the Department concerning a policy matter" where "the counsel obtained the employee's name and/or contact information from a document released in the FOIA process." Weetman Decl. ¶ 23. "This contact is the very type of privacy invasion Exemption 6 is designed to prevent." *Elec. Privacy Info. Ctr. v. Dep't Homeland Sec.*, 384 F. Supp. 2d 100, 117 (D.D.C. 2005).

On the other hand, disclosing the names of these working-level or lower-ranking DOD and State Department employees would not advance FOIA's purpose of shedding light on governmental decision-making. "There is limited public interest in knowing the exact identity or contact information of the working-level [Defense and State] Department employees involved in the FGE adjudication process," especially since the identities of the senior officials involved in that process have not been withheld. Weetman Decl. ¶ 24. Nor could any minimal interest in the line-level employees' identities outweigh their substantial privacy interest in nondisclosure. In fact, courts have routinely upheld such withholdings under Exemption 6 to protect agency personnel from annoyance or harassment. *See Long v. U.S. Office of Pers. Mgmt.*, 692 F.3d 185,

192 (2d Cir. 2012) ("Plaintiffs have identified no appreciable public interest militating in favor

of the wholesale disclosure of names of employees in sensitive agencies and sensitive

occupations."); *see also Walston v. Dep't of Def.*, 238 F. Supp. 3d 57, 67 (D.D.C. 2017); *EPIC*,

384 F. Supp. 2d at 117; *Ctr. for Pub. Integrity v. Off. of Pers. Mgmt.*, Civ. A. No 04-1274 (GK),

2006 WL 3498089, at *6 (D.D.C. Dec. 4, 2006).

Defendants' withholding of the handwritten signatures and contact information of all

DOD and State Department employees involved in the foreign government employment

adjudication process also comports with FOIA's Exemption 6.  Release of that information

would provide no insight whatsoever into U.S. Government operations or Defendants'

adjudication of foreign government employment applications and would subject federal

employees to a significant risk of harassment, forgery, and/or identity theft, thus substantially

harming their privacy interests.  That information therefore falls squarely within the categories of

sensitive personal information properly protected under FOIA Exemption 6

### 4.  *The Air Force and the Defense Inspector General's Office Properly Withheld Personal Information Pursuant to Exemption 7(C).*

The Air Force and relied on Exemption 7(C) to withhold the names and rank of

individuals.  Collins Decl. ¶ 32.  The Defense Inspector General's Office relied on Exemption

7(C) to withhold the name and signatures of investigative personnel.  Dorgan Decl. ¶ 44.

Like Exemption 6, Exemption 7(C) protects from disclosure "records or information

compiled for law enforcement purposes" to the extent that the disclosure of law enforcement

records or information "could reasonably be expected to constitute an unwarranted invasion of

personal privacy."  5 U.S.C. § 552(b)(7)(C).  In assessing whether records are compiled for a law

enforcement purpose, the "focus is on how and under what circumstances the requested files

were compiled, and whether the files sought relate to anything that can fairly be characterized as

an enforcement proceeding." *Jefferson v. Dep't of Just.*, 284 F.3d 172, 176-77 (D.C. Cir. 2002) (citations and internal quotations omitted). "[T]he term 'law enforcement purpose' is not limited to criminal investigations but can also include civil investigations and proceedings in its scope." *Mittleman v. Off. of Pers. Mgmt.*, 76 F.3d 1240, 1243 (D.C. Cir. 1996).

The record from which the Defense Office of Inspector General redacted personal information was compiled for law enforcement purposes. A record is compiled for law enforcement purposes when it "focus[es] directly on specifically alleged illegal acts, illegal acts of particular identified officials, acts which could, if proved, result in civil or criminal sanctions." *Rural Hous. Alliance v. Dep't of Agric.*, 498 F.2d 73, 81 (D.C. Cir. 1974). When a military investigation may result in a finding of a violation of law or regulation, records accumulated during the course of that investigation are compiled for a law enforcement purpose. *See Lurie v. Dep't of Army*, 970 F. Supp. 19, 36 (D.D.C. 1997) (finding that records concerning an informal Army investigation into alleged misconduct by command personnel were compiled for law enforcement purposes). Here, the Office of Inspector General compiled the lone record at issue in conjunction with its audit and investigative functions pursuant to the Inspector General Act of 1978, 5 U.S.C. Appx. 3, and implemented by Defense Department Directive 5106.01.[9] Collins Decl. ¶ 32; Dorgan Decl. ¶ 42.

The individual's significant privacy interests in the nondisclosure of information that could identify him or her is not outweighed by any cognizable public interests. This is because the disclosure of the identity of an investigator employed by the Defense Inspector General's

---

[9]    Department Directive No. 5106.01, titled "Inspector General of the Department of Defense" is publicly available at https://www.esd.whs.mil/Portals/54/Documents/DD/issuances/dodd/510601p.pdf?ver=2020-05-29-143946-603. Paragraph 5 of the Directive describes the Office of Inspector General's responsibilities regarding audit and criminal investigative matters, among other functions.

Office would not shed any light on how the government is discharging its statutory obligations. If there is no public interest in the disclosure of certain information, "something, even a modest privacy interest, outweighs nothing every time." *Nat'l Ass'n of Retired Fed. Emps. v. Horner*, 879 F.2d 873, 879 (D.C. Cir. 1989).

Accordingly, the Court should grant summary judgment in favor of Defendants with respect to the Air Force's and Defense Inspector General's Office's withholding of its investigator's name and signature.

### C. The State Department Appropriately Withheld Sensitive Commercial Information Under Exemption 4.

The State Department withheld commercial information that was generated and voluntarily submitted by two former service members and their prospective employer, Global Alliance Advisors, LLC ("Global Alliance") to explain why the applicants' prospective employment would qualify as foreign government employment under 37 U.S.C. § 908. Weetman Decl. ¶ 14. These withholdings are appropriate under Exemption 4.

Exemption 4 "shields from mandatory disclosure 'commercial or financial information obtained from a person and privileged or confidential.'" *Food Mktg. Inst. v. Argus Leader Media*, 139 S. Ct. 2365, 2362 (2019) (quoting 5 U.S.C. § 552(b)(4)). For information to be covered by Exemption 4, it must be "(1) commercial or financial, (2) obtained from a person, and (3) privileged or confidential." *Pub. Citizen Health Rsch. Grp. v. FDA*, 704 F.2d 1280, 1291 (D.C. Cir. 1983).

Confidentiality is the key consideration in evaluating application of Exemption 4. In *Argus Leader*, the Supreme Court articulated that the term "confidential," as it is used in Exemption 4, must be given its "ordinary, contemporary, common meaning" at the time the statute was enacted in 1966 and that "[t]he term 'confidential' meant then, as it does now,

29

'private' or 'secret.'"  139 S. Ct. at 2362-63 (quoting *Perrin v. United States*, 444 U.S. 37, 42

(1979)).  In so doing, the Court rejected the "competitive harm" standard, which had required a

showing that disclosure of the information was "likely to cause substantial harm to the

competitive position of the person from whom the information was obtained."  *Id.* at 2367.  The

Court further explained that "FOIA expressly recognizes that 'important interests [are] served by

[its] exemptions,' . . . and '[t]hose exemptions are as much part of [FOIA's] purpose[s and

policies] as the [statute's disclosure] requirements.' . . . So just as we cannot properly *expand*

Exemption 4 beyond what its terms permit, we cannot arbitrarily *constrict* it either by adding

limitations found nowhere in its terms."  *Id.* at 2366 (citations omitted, alterations and emphasis

in original).  The Supreme Court further observed that, in some instances, it might be possible

for "privately held information [to] *lose* its confidential character for purposes of Exemption 4 if

it's communicated to the government without assurances that the government will keep it

private." *Id.* at 2363.  However, nothing in the statute's text or history suggests that, for

information that is typically treated as confidential by its owner, the government must in each

instance show that it made assurances of confidentiality to establish that the information would

be exempt.

     The State Department withheld pursuant to Exemption 4 confidential commercial

information contained in two of the records released to Plaintiff, which information was

submitted voluntarily to the U.S. Government and which is privileged and confidential within the

meaning of FOIA Exemption 4.  It consists of information that the applicants' and their

prospective employer would not customarily disclose to the public and that the prospective

employer deemed commercially and financially sensitive.  Weetman Decl. ¶ 14.

Mary Beth Long, Global Alliance's Principal and Co-Founder, has submitted a declaration confirming that the redacted confidential commercial information has not been publicly acknowledged by Global Alliance in any way, including in company press releases, advertisements, interviews, or any other publicly available source.  Long Decl.[10] ¶ 3.  That information was conveyed to the Government by two prospective Global Alliance employees in connection with their foreign government employment applications, as a means of explaining why their prospective employment with Global Alliance would qualify under 37 U.S.C. § 908. *Id.* ¶ 4.  Upon receipt of that information, the Government assured the prospective Global Alliance employees that the information would remain private.  *Id.*  Ms. Long has determined that release of the withheld information in response to Plaintiff's FOIA would cause significant harm to Global Alliance's commercial interests.  *Id.* ¶¶ 3-4.

Under these circumstances, the State Department appropriately relied on Exemption 4 to withhold Global Alliance's confidential commercial information.

## III.   DEFENDANTS COMPLIED WITH FOIA'S FORESEEABLE HARM REQUIREMENT.

Defendant satisfied FOIA's requirement that, for each withholding, they "reasonably foresee[] that disclosure would harm an interest protected by [the] exemption."  5 U.S.C. § 552(a)(8)(A)(i)(I); *Amadis v. Dep't of State*, 971 F.3d 364, 370-71 (D.C. Cir. 2020).  The agency declarations explain that, with respect to each withholding, it was reasonably foreseeable that disclosure of the withheld information would harm an interest protected by the exemption relied upon.

---

[10]   Citations to "Long Decl." refer to the Declaration of Mary Beth Long, dated December 13, 2021, submitted herewith.

Specifically, the Army and Navy's declarations establish the foreseeable harm that would occur if the withheld legal memoranda are disclosed.  Oakes Decl. ¶ 33; Wald Decl. ¶ 15.  All Defendants' declarations explain why the disclosure of the withheld personal information of former service members and current Defense Department and State Department employees would constitute a clearly unwarranted invasion of privacy regarding those individuals.  Collins Decl. ¶¶ 30-31; Dorgan Decl. ¶ 44; Oakes Decl. ¶ 36; Wald Decl. ¶¶ 45-48; Weetman Decl. ¶¶ 17-28.  Finally, the declarations submitted by the State Department and Global Alliance provide ample evidentiary support for the conclusion that the release of the company's confidential commercial information would foreseeably harm the company.  Long Decl. ¶ 3; Weetman Decl. ¶ 14.

For these reasons, the Court should conclude that Defendants have complied with FOIA's foreseeable harm requirement.

## IV.  DEFENDANTS COMPLIED WITH FOIA'S SEGREGABILITY REQUIREMENT.

Under the FOIA, if a record contains information exempt from disclosure, any "reasonably segregable," non-exempt information subject to FOIA must be disclosed after redaction of the exempt information.  5 U.S.C. § 552(b).  Non-exempt portions of records need not be disclosed if they are "inextricably intertwined with exempt portions."  *Mead Data Cent., Inc. v. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977).  To establish that all reasonably segregable, non-exempt information has been disclosed, an agency need only show "with 'reasonable specificity'" that the information it has withheld cannot be further segregated. *Armstrong v. Exec. Off. of the President*, 97 F.3d 575, 578-79 (D.C. Cir. 1996); *Canning v. Dep't of Just.*, 567 F. Supp. 2d 104, 110 (D.D.C. 2008).  "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material," which must be

overcome by some "quantum of evidence" by the requester.  *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007).

In this case, Defendants have confirmed that they reviewed the responsive documents line by line, that non-exempt portions were segregated from exempt portions, and that all non-exempt portions were produced.  Collins Decl. ¶¶ 25-26; Dorgan Decl. ¶¶ 45-47; Oakes Decl. ¶¶ 41-42; Wald Decl. ¶¶ 49-50; Weetman Decl. ¶ 30.  Accordingly, Defendants have complied with FOIA's segregability requirement.

## CONCLUSION

For the reasons set forth above, the Court should grant this motion and enter summary judgment in favor of Defendants.

Dated:  December 14, 2021

Respectfully submitted,

MATTHEW M. GRAVES, D.C. Bar #481052
United States Attorney

BRIAN P. HUDAK
Acting Chief, Civil Division

_____/s/ *Paul Cirino*_____
PAUL CIRINO, D.C. Bar #1684555
Assistant United States Attorney
U.S. Attorney's Office for the District of Columbia
555 4th Street, N.W.
Washington, D.C.  20530
Telephone: (202) 252-2529
paul.cirino@usdoj.gov

*Counsel for Defendants*