IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**WP COMPANY LLC**
**d/b/a THE WASHINGTON POST**,

           Plaintiff,

v.

**U.S. DEPARTMENT OF DEFENSE, et al.**,

           Defendants.

Case No. 21-cv-1025-APM

**PLAINTIFF'S STATEMENT OF MATERIAL FACTS AS TO WHICH THERE
IS NO GENUINE DISPUTE AND RESPONSE TO DEFENDANTS'
STATEMENT OF UNDISPUTED MATERIAL FACTS**

Plaintiff WP Company LLC d/b/a The Washington Post, by and through counsel and pursuant to Local Civil Rule 7(h), submits this Statement of Material Facts as to Which There is no Genuine Dispute with its Cross-Motion for Summary Judgment, together with its Response to the Statement of Material Facts as to Which There is no Genuine Dispute submitted by Defendants with their Motion for Summary Judgment ("Defendants' Statement"), Dkt. 21-9.

**PLAINTIFF'S STATEMENT OF MATERIAL FACTS NOT IN GENUINE DISPUTE**

1. Article I, Section 9, Clause 8 of the U.S. Constitution provides that "no person holding any office of profit or trust under [the United States], shall, without the consent of the Congress, accept of any present, emolument, office, or title, of any kind whatever, from any king, prince, or foreign state." U.S. Const., art. I, § 9, cl. 8.

2. Federal law provides that any "[r]etired member of the Regular Army, Regular Navy, Regular Air Force, Regular Marine Corps, or Regular Space Force" can be "ordered to active duty by the Secretary of the military department concerned at any time," and also that

certain statutory limits on this practice "do not apply in time of war or of national emergency declared by Congress or the President." 10 U.S.C. § 688.

3. Given this authority, as DOD has observed, "<u>retired</u> regular military <u>officers</u> are . . . subject to the Emoluments Clause because they are subject to recall, and, therefore, hold an 'Office of Profit or Trust' under the Emoluments Clause." *See Application of the Emoluments Clause to DoD Civilian Employees and Military Personnel* at 4, DOD Standards of Conduct Office, https://dodsoco.ogc.osd.mil/Portals/102/emoluments_clause_applications.pdf (emphasis in original).

4. Likewise, "[r]etired regular military <u>enlisted</u> personnel are subject to the Emoluments Clause for the same reason." *Id.* (emphasis in original).

5. Because all retired U.S. service members are therefore subject to the Foreign Emoluments Clause, "[a]s interpreted in Comptroller General opinions and by the Department of Justice Office of Legal Counsel, the Emoluments Clause prohibits receipt of consulting fees, gifts, travel expenses, honoraria, or salary by all retired military personnel, officer and enlisted, Regular and Reserve, from a foreign government <u>unless Congressional consent is first obtained</u>." *See Summary of Emoluments Clause Restrictions* at 1, DOD Standards of Conduct Office, https://dodsoco.ogc.osd.mil/Portals/102/summary_emoluments_clause_restrictions.pdf (emphasis in original).

6. In 37 U.S.C. § 908, Congress provided its consent, as a blanket matter, for retired members of the military to seek "civil employment (and compensation for that employment)" from foreign governments so long as they receive approval from the U.S. Secretary of State and the Secretary of their respective branch of the military. *Id.* § 908(a)-(b).

7. Each branch of the military manages its own application process to receive such approval. *See Summary of Emoluments Clause Restrictions* at 1-2.

8. The State Department's Office of State-Defense Integration "manages the State Department's approval process for requests by retired U.S. uniformed-services personnel seeking employment with a foreign government," which "begins following approval of the request by the relevant branch of the Armed Services." *See About Us*, State Department Office of State-Defense Integration, https://www.state.gov/bureau-of-political-military-affairs-office-of-state-defense-integration-pm-sdi/.

9. In August 2017, the Project On Government Oversight ("POGO") reported that, through FOIA, it had obtained the names of "seven retired Marine Corps officers . . . who sought and obtained permission from the Marine Corps to be paid to work on behalf of foreign governments and companies after they retired." *See* Mandy Smithberger, *Generally Concerning*, POGO (Aug. 2, 2017), https://www.pogo.org/investigation/2017/08/generally-concerning/.

10. Those officers included President Trump's first Secretary of Defense, James Mattis, President Trump's second White House Chief of Staff, John Kelly, President Obama's first National Security Advisor, James L. Jones, and the 35th Commandant of the Marine Corps, James F. Amos, each of whom retired from the Marines at the rank of four-star general. *Id.*

11. According to the materials obtained by POGO, General Jones received permission in April 2017 to work as an "Independent Security Consultant" for "the Minister of Defense for the Kingdom of Saudi Arabia." *Id.*

12. Since January 2015, that position has been filled by Prince Mohammed Bin Salman ("MBS"), who in 2018 personally approved the assassination of journalist Jamal Khashoggi, a contributor to the *Post*'s Global Opinions section. *See Assessing the Saudi*

*Government's Role in the Killing of Jamal Khashoggi*, ODNI (Feb. 26, 2021), https://www.dni.gov/index.php/newsroom/reports-publications/reports-publications-2021/item/2186-assessing-the-saudi-government-s-role-in-the-killing-of-jamal-khashoggi.

13. In October 2020, the *Post* submitted a series of FGE-related FOIA requests to each of the Defendants.

14. From the Air Force, Navy, Army, and Marines, the *Post* requested "[a]ll application records for Foreign Government Employment (FGE) from retired or former military personnel in your service" from January 1, 2015 to present. *See* Compl., Exs. 2, 4, 6, 8.

15. From DOD's Office of Inspector General ("OIG") and the OIGs of each of the service branches, the *Post* requested "[a]ll records, including but not limited to Inspector General investigations, mentioning Foreign Government Employment (FGE) of retired or former military personnel" from January 1, 2015 to present. *Id.*, Exs. 3, 5, 7, 9, 10.

16. From the State Department, the *Post* requested "[a]ll records related to [FGE] Requests," including "all State Department approvals and denials of FGE requests," from January 1, 2015 to present. *Id.*, Ex. 11.

17. The *Post* administratively appealed the constructive denials of its requests to DOD OIG, the Air Force, the Air Force OIG, the Army, the Army OIG, the Marines, the Marines OIG, and the State Department. *Id.*, Exs. 16, 18-24.

18. DOD OIG replied by disputing the validity of any such administrative appeal of a constructive denial and inviting the *Post* to file a lawsuit, *see id.* Ex. 17, and the remaining offices did not even respond to the *Post*'s administrative appeals.

19. Senior military officers are required to file annual public financial disclosures until they leave active service. *See, e.g.*, 5 C.F.R. § 2634.202(c) (listing "each member of a

4

uniformed service whose pay grade is at or in excess of O-7" among the persons required to file public financial disclosure reports under the Ethics in Government Act).

20.     Military retirees remain subject to court-martial under the Uniform Code of Military Justice.  10 U.S.C. § 802(a)(4).

21.     If a retiree obtains foreign employment without permission, Defendants "can suspend retirement pay up to the amount of the foreign salary (or other emoluments) received, if the foreign salary is less than one's retirement pay." *See Summary of Emoluments Clause Restrictions* at 1, DOD Standards of Conduct Office.

22.     However, "when the compensation earned during the period of unauthorized employment with a foreign state exceeds the amount of retired pay accrued during the same period, only the retired pay received during the violation may be collected, not the full amount of pay received from the foreign government." *Id.*

23.     If a retiree obtains compensation from a foreign government that exceeds their retirement pay without authorization, therefore, DOD may claw back only the amount of retirement pay received during the violation; the retiree is entitled to keep the excess amount received from the foreign government.

24.     In October 2019, Air Force Gen. Charles Wald applied for permission to provide "strategic guidance" in "advising the Government of Libya on national security, intelligence, anti-terrorism and defense matters." *See* Declaration of Charles D. Tobin ("Tobin Decl."), Ex. 1 at 11.

25.     Though the records reflect that the Air Force Office of Special Investigations "found information indicating significant counterintelligence and counterterrorism issues" with

Libya in December 2019, *id.* at 7, the Air Force provided its approval in February 2020, *id.* at 3, and the State Department gave its permission in March 2020, *id.* at 1.

26. In March 2019, Marine Gen. James Mattis applied for permission to attend a conference and deliver a lecture to the Crown Prince of the UAE and other senior officials on the "US/UAE strategic relationship." *See* Tobin Decl., Ex. 2 at 2.

27. In his application, Gen. Mattis stated he would receive an honorarium for this lecture, plus airfare and lodging reimbursement. *Id.*

28. In January 2019, Army Gen. Keith Alexander received approval to work as a consultant for the Kingdom of Saudi Arabia, specifically with the Mohammed Bin Salman College of Cyber Security, Artificial Intelligence, and Advanced Technologies. *See* Tobin Decl., Ex. 3 at 1.

29. In August 2017, Army Maj. Gen. John Altenburg, Jr. – the former Deputy Judge Advocate General to the U.S. Army – applied for employment as legal counsel for the UAE Ministry of Presidential Affairs. *See* Tobin Decl., Ex. 4 at 1-3.

30. Gen. Altenburg stated in his application that his proposed duties would call on him to "advise UAE Ministry of Presidential Affairs regarding actions most likely to generate favorable actions by U.S. Government [and] attend meetings between Ministry of Presidential Affairs officials and U.S. government officials." *Id.* at 3.

31. In November 2016, Marine Gen. James L. Jones – a former National Security Adviser and Commandant of the U.S. Marine Corps – applied for his consulting firm, Ironhand Security, to work with Saudi Arabia's Ministry of Defense "regarding the modernization of [its] Armed Forces." Tobin Decl., Ex. 5 at 2.

32. All "[o]riginal appointments of commissioned officers" at or below the rank of Lieutenant in the Navy or Captain in the Army, Air Force, or Marines are "made by the President alone." 10 U.S.C. § 531(a)(1),

33. For commissioned officers at or above the rank of Lieutenant Commander in the Navy or Major in the Army, Air Force, or Marines, such appointments are "made by the President, by and with the advice and consent of the Senate." *Id.* § 531(a)(2).

34. In October 2019, a retired U.S. Air Force colonel applied for permission to become the Senior Vice President and General Counsel of ILS United Launch Services Inc., a U.S. corporation majority owned by the Khrunichev State Research and Production Space Center, an arm of the Russian government. *See* Tobin Decl., Ex. 6 at 11.

35. The applicant stated that the position would entail, *inter alia*, "overseeing all licensing activities with the Department of State," and that the anticipated salary "would be approximately $300,000 a year." *Id.* at 11-12.

36. The Air Force and State Department approved the employment. *Id.* at 1.

37. In 2020, then-candidate Joseph R. Biden described Russia as the greatest near-term geopolitical threat to the United States. *See, e.g.*, *Where Democrats Stand: Foreign Policy*, The Washington Post, https://www.washingtonpost.com/graphics/politics/policy-2020/foreign-policy/greatest-geopolitical-threat/.

38. On November 30, 2016, two retired Marine colonels applied for approval to work for Saudi Arabia's Ministry of Defense through Ironhand Security, a firm owned by Marine Gen. Jones. *See* Tobin Decl., Ex. 7 at 10, 21.

39. The colonels' applications note that "Ironhand has been hired by the Minister of Defense" – *i.e.*, MBS – "to review internal military modernization reports from Saudi Arabia's

7

Ministry of Defense regarding the modernization of the Kingdom's Armed Forces," *id.* at 21, and list a salary from Ironhand of "approximately $25,000/month," *id.* at 16-17.

40. The Marines and State Department approved the employment. *Id.* at 1, 12.

41. Defendants have produced FGE records that describe Global Alliance Advisors, LLC as "a Virginia LLC which has a pending contract proposal with the Qatari Minister of Defense (MOD) for advice and mentoring." *See* Declaration of Maj. Robert Wald, Ex. 2 at 2 (FGE application of Army Gen. Joseph W. Rank), Dkt. 21-5.

42. According to data that the Air Force provided to the *Post*, the Air Force received 215 FGE applications between 2015 and 2020. *Id.* *See* Declaration of Craig Whitlock ("Whitlock Decl."), Ex. A.

43. Air Force policy provides that the Secretary of the Air Force, Air Force Review Boards Agency "will maintain a copy of applicant foreign government employment request packages, to include the decision memorandum and all supporting documents, for a period of five years." AFI 36, 2913, *Requests for Approval of Foreign Government Employment of Air Force Members*, at 3.8.2 (July 1, 2020), https://www.retirees.af.mil/Portals/53/documents/FGE/AFI%2036-2913.pdf?ver=2016-08-17-112414-970.

44. In response to the *Post*'s FOIA request, the State Department has produced 398 "final determination letters" for FGE applications that were referred to the State Department by the Army, Navy, Air Force, or Marines since January 1, 2015. Whitlock Decl. ¶ 12.

45. According to the records of the Army, Navy, Air Force, and Marines, those service branches approved and referred to the State Department 538 FGE applications between January 1, 2015 and April 16, 2021. *See* Whitlock Decl. ¶¶ 3-11, 13 & Exs. A-D.

**RESPONSE TO DEFENDANTS' STATEMENT**

1. Disputed in part. The *Post* disputes that FGE applicants – a group that includes retired admirals and generals and other upper-echelon officers, many of whom have also held senior positions in government – are properly characterized as "private citizens."

2. The facts set forth in this paragraph are undisputed.

3. The facts set forth in this paragraph are undisputed.

4. The facts set forth in this paragraph are undisputed.

5. The facts set forth in this paragraph are undisputed.

6. The facts set forth in this paragraph are undisputed.

7. The facts set forth in this paragraph are undisputed.

8. The facts set forth in this paragraph are undisputed.

9. The facts set forth in this paragraph are undisputed.

10. The facts set forth in this paragraph are undisputed.

11. The facts set forth in this paragraph are undisputed.

12. The facts set forth in this paragraph are undisputed.

13. The facts set forth in this paragraph are undisputed.

14. The facts set forth in this paragraph are undisputed.

15. The facts set forth in this paragraph are undisputed.

16. The facts set forth in this paragraph are undisputed.

17. The facts set forth in this paragraph are undisputed.

18. The facts set forth in this paragraph are undisputed.

19. The facts set forth in this paragraph are undisputed.

20. The facts set forth in this paragraph are undisputed.

21. The facts set forth in this paragraph are undisputed.

22. The facts set forth in this paragraph are undisputed.

23. The facts set forth in this paragraph are undisputed.

24. The facts set forth in this paragraph are undisputed.

25. The facts set forth in this paragraph are undisputed.

26. Disputed in part. Whether the Marines Corps Office of the Inspector General has "authority to investigate retired Marines" constitutes a legal argument or conclusion.

27. The facts set forth in this paragraph are undisputed.

28. The facts set forth in this paragraph are undisputed.

29. The facts set forth in this paragraph are undisputed.

30. The facts set forth in this paragraph are undisputed.

31. The facts set forth in this paragraph are undisputed.

32. The facts set forth in this paragraph are undisputed.

33. The facts set forth in this paragraph are undisputed.

34. The facts set forth in this paragraph are undisputed.

35. The facts set forth in this paragraph are undisputed.

36. The facts set forth in this paragraph are undisputed.

37. The facts set forth in this paragraph are undisputed.

38. The facts set forth in this paragraph are undisputed.

39. Disputed in part. The *Post* disputes that any "opinions" contained in these memoranda are "based upon the factual predicate provided by the Deputy Commandant, Manpower and Reserve Affairs," rather than upon facts contained in the FGE applications.

40. Disputed in part. Defendants have not withheld security clearance information for all FGE applicants who held ranks of O-7 and higher. *Compare, e.g.*, Tobin Decl., Ex. 5 at 3 (disclosing that Gen. Jones held a Top Secret / Sensitive Compartmented Information ("TS/SCI") security clearance)*, and id.* Ex. 2 at 2 (disclosing the same for Gen. Mattis)*, with id.* Ex. 1 at 14 (withholding security clearance information for Gen. Wald).

41. The facts set forth in this paragraph are undisputed.

42. The facts set forth in this paragraph are undisputed.

43. The facts set forth in this paragraph are undisputed.

44. The facts set forth in this paragraph are undisputed.

45. The facts set forth in this paragraph are undisputed.

46. The facts set forth in this paragraph are disputed in part, but immaterial. The *Post* disputes that the information at issue was submitted "voluntarily" rather than as a necessary condition of seeking approval for the FGE applications in question.

47. The facts set forth in this paragraph are undisputed, but immaterial.

48. The facts set forth in this paragraph are undisputed, but immaterial.

49. The facts set forth in this paragraph are undisputed, but immaterial.

50. The facts set forth in this paragraph are disputed in part, but immaterial. The *Post* does not dispute that Global Alliance Advisors *asserted* that release of the withheld information would cause significant harm to its commercial interests, but the *Post* disputes that Global Alliance Advisors *determined* that release of the withheld information would cause such harm.

| | |
|---|---|
| Dated:  January 14, 2021 | Respectfully submitted,<br><br>BALLARD SPAHR LLP<br><br>/s/ *Charles D. Tobin*<br>Charles D. Tobin (#455593)<br>Maxwell S. Mishkin (#1031356)<br>Emmy Parsons (#1026101)<br>1909 K Street, NW, 12th Floor<br>Washington, DC 20006<br>Telephone: (202) 661-2200<br>Fax: (202) 661-2299<br>tobinc@ballardspahr.com<br>mishkinm@ballardspahr.com<br>parsonse@ballardspahr.com<br><br>*Counsel for Plaintiff WP Company LLC,*<br>*d/b/a The Washington Post* |