# Exhibit 5



DEPARTMENT OF THE NAVY
HEADQUARTERS UNITED STATES MARINE CORPS
3280 RUSSELL ROAD
QUANTICO, VIRGINIA 22134-5103

IN REPLY REFER TO:
5300
MMSR-6
3 Apr 17

From: Commandant of the Marine Corps
To:   General James L. Jones USMC (Ret.)

Subj: FOREIGN EMPLOYMENT REQUEST

Ref:  (a) Your request of 29 Nov 16

Encl: (1) Copy of Dept. of State letter of 31 Mar 17

1. This is in response to the reference in which you requested approval of your foreign employment.

2. As indicated by the enclosure, the request contained in the reference has been approved by the Secretary of the Navy and the Secretary of State.

(b)(6)

By direction

## Foreign Government Employment Questionnaire

Name: (last, first, middle initial): Jones, James, L

Physical address (include mailing if different): (b)(6) (b)(6)

Phone: (b)(6)

Email (b)(6)

Military Retirement Date (if applicable): 1 February 2007

Rank/Rate (at retirement): General (O-10)

SSN (last four digits) (b)(6)

1. Who is your proposed employer and how are they connected to a foreign government?

    N/A: There is no proposed employer. The company I own, Ironhand Security, is being hired as independent consultant to review internal reports from the Saudi Arabia's Ministry of Defense regarding the modernization of the Armed Forces.

2. What is your proposed job title?

    Independent Security Consultant

3. What will your job duties involve? If a job description is available, please attach.

    As an independent, external consultant working for Ironhand Security, I will be providing unclassified strategic security consulting to Ironhand Security concerning its program with the Minister of Defense for the Kingdom of Saudi Arabia.

4. Will you be paid for duties performed? If yes, please provide an explanation of wages (to include amount of pay) and how your level of pay will be affected by the foreign government with which you are working.

    Ironhand Security will be paid by the Ministry of Defense. The services I will provide to Ironhand Security will be compensated with a monthly fee from Ironhand. Actual fees are under negotiation but are expected to be within the (b)(6) month range.

5. Are you a U.S. citizen?

    Yes

6. Will you be required to execute an oath of allegiance to the foreign government with which you are working or to alter your U.S. citizenship status?

    No.

7. What is the highest U.S. security clearance you have held?

    TS/SCI

8. What is the highest level of classified material to which you have been granted access?

    TS/SCI

9. Have you had access to Special Access Programs?

    YES

10. Will you work with classified information as part of your foreign employment? If yes, please explain.

    NO.

11. Have you ever worked on matters involving this foreign country as part of your uniformed service duties? If yes, please explain.

    I served as the Commandant of the Marine Corps from 1999-2003 and the NATO Supreme Allied Commander and Commander, EUCOM from 2003-2007. During those tours, the Kingdom of Saudi Arabia supported the US during Operation Enduring Freedom/Operation Iraqi Freedom.

12. Have you held any positions in the uniformed service that are relevant to your employment with the foreign government? If yes, please explain.

    Yes, I served in various levels of command, from 2ndLt (O-1) to General (O-10) and in several joint billets, each providing experience and expertise to provide such consulting services.

13. Have you had access to technical data (classified, unclassified, or software) related to the design, development, production, manufacture, etc. of defense articles? If yes, please describe ways in which such information may be of use in your potential job. If applicable, has your employer or have you applied for and received an export license for the defense services that you are offering?

    Yes, I have had access to such technical data but I do not anticipate such technical data being applicable to the strategic modernization consulting services

Ironhand Security will provide. The core of our services will be focused on the organizational structure of the Armed Forces and creating a joint force. Yes, my company, Ironhand Security, has applied for an export license for these services.

I hereby acknowledge that I am unaware of any reason why the above described foreign employment would be inadvisable or reflect unfavorably on the United States. I also acknowledge and understand that my retired or retainer pay may be withheld equal to the amount received from the foreign government if I accept employment before obtaining proper approval. I affirm that the above questions have been reviewed carefully and answered fully and correctly to the best of my knowledge.

_James L Jones_   29 Nov 2016
Signature                Date



DEPARTMENT OF THE NAVY
HEADQUARTERS UNITED STATES MARINE CORPS
3280 RUSSELL ROAD
QUANTICO, VIRGINIA 22134-5103

IN REPLY REFER TO:
5300
MMSR-6
12 Dec 19

From: Commandant of the Marine Corps
To:   General James L. Jones USMC (Ret.)

Subj: FOREIGN EMPLOYMENT REQUEST

Ref:  (a) Your request of 30 Oct 19

Encl: (1) Copy of Dept. of State letter of 11 Dec 19

1. This is in response to the reference in which you requested approval of your foreign employment.

2. As indicated by the enclosure, the request contained in the reference has been approved by the Secretary of the Navy and the Secretary of State.

(b)(6)

By direction

## Foreign Government Employment Questionnaire

Name: Jones, James, L.

Physical address (include mailing if different): (b)(6)

Phone: (b)(6)

Email: (b)(6)

Military Retirement Date (if applicable): 01 Feb 2007

Rank/Rate (at retirement): General/O-10

SSN (last four digits) (b)(6)

Location of proposed employment:

1. Who is your proposed employer and how are they connected to a foreign government?
   N/A: There is no proposed employer. The company I own, Jones Group International, LLC is being hired by the Libyan Government of National Accord (GNA) as an independent consultant to perform initial assessments in determining Libyan national security objects.
   Involves a two (2) phased assessment. Phase I, a four (4) month effort, is an initial assessment that will examine current capabilities, determine priorities, and Libyan national security objectives. A final report will be delivered to Libya's GNA which will enable them to determine structure of Libya's security forces. Phase II, if exercised by the GNA, will be a comprehensive transformation plan that builds upon the initial assessment.

2. What is your proposed job title?

   Independent Security Consultant

3. What will your job duties involve? Please explain in as much detail as possible (If a job description is available, please attach).

   I will be providing unclassified strategic security consulting to Jones Group Intl concerning its contract with the Libyan Government of National Accord.

4. Will you be paid for duties performed? If yes, please provide an explanation of wages (to include salary; housing allowance, any extra stipends, etc.) and how your level of pay will be affected by the foreign government with which you are working.

Jones Group International will be paid by the Libyan Government of National Accord (GNA). The part-time services I will provide to Jones Group International, for this effort, will be compensated with an approximate monthly fee of (b)(6)

5. Are you a U.S. citizen?

    Yes

6. Will you be required or are you planning to execute an oath of allegiance to the foreign government with which you are working, alter your U.S. citizenship status, or obtain foreign citizenship?

    No

7. What is the highest U.S. security clearance that you have held?

    TS/SCI

8. What is the highest level of classified material to which you have been granted access?

    TS/SCI

9. Have you had access to Special Access Programs?

    Yes

10. Will you be working with classified information as part of your foreign employment? If yes, please explain in as much detail as possible.

    I will not be working with U.S. classified information.

11. Have you ever worked on matters involving this foreign country as part of your uniformed service duties? If yes, please explain in as much detail as possible.

    No

12. Have you held any positions in the uniformed service that are relevant to your employment with the foreign government? If yes, please explain.

    Yes, I served in various levels of command, from 2nd Lt (O-1) to General (O-10) and in several joint billets, each providing experience and expertise to provide such consulting services.

13. If you believe you are, or might be, providing a defense service or brokering, have you or your employer applied for and/or received an export license, or other form of authorization from the Department of State, Directorate of Defense Trade Controls (DDTC)?¹ If your answer is no, you will

need to further investigate and work with your employer to get the correct DDTC authorization in place before you start any ITAR-controlled activities as part of your employment.[ii]

    An application for a U.S. export license/technical assistance agreement has been submitted to DDTC

14. Did you receive a debriefing upon retiring from the uniformed service? If so, did you complete an SF-312, Classified Information Nondisclosure agreement?

    Yes, both to a debriefing and completed SF-312, Classified Information Nondisclosure agreement

I hereby acknowledge that I am unaware of any reason why the above described foreign employment would be inadvisable or reflect unfavorably on the United States. I also acknowledge and understand that my retired or retainer pay may be withheld equal to the amount received from the foreign government if I accept employment before obtaining proper approval. I affirm that the above questions have been reviewed carefully and answered fully and correctly to the best of my knowledge.

_____          _30 Oct 19
Signature                                          Date

---

[i] The International Traffic in Arms Regulation (ITAR) regulates, in part, business activity between U.S. persons and foreign persons pertaining to defense articles, technical data, and defense services that contain controlled U.S. military technology (including U.S. military operational and tactical expertise) and are designated on the United States Munitions List (USML). The Department of State, Directorate of Defense Trade Controls (DDTC) administers the ITAR. While applicants should refer to the ITAR for the full regulatory meaning of relevant terms, the following—in some cases, abbreviated—definitions are provided to assist you in evaluating the need for DDTC authorization:

    *"Defense service"* (ITAR §120.9) means:
        (a) The furnishing of assistance (including training) to foreign persons, whether in the United States or abroad in the design, development, engineering, manufacture, production, assembly, testing,

repair, maintenance, modification, operation, demilitarization, destruction, processing or use of defense articles;
    (b) The furnishing to foreign persons of any controlled technical data whether in the United States or abroad; or
    (c) Military training of foreign units and forces, regular and irregular, including formal or informal instruction of foreign persons in the United States or abroad or by correspondence courses, technical, educational, or information publications and media of all kinds, training aid, orientation, training exercise, and military advice.

"*Defense article*" (ITAR §120.6) means any item or technical data designated in the United States Munitions List (USML). The USML is found in ITAR § 121.1. Defense article includes technical data recorded or stored in any physical form, models, mockups or other items that reveal technical data directly relating to items designated in the USML. The term does not include basic marketing information on function or purpose or general system descriptions.

"*Technical data*" (ITAR §120.10) means:
    (a) Information, other than software, which is required for the design, development, production, manufacture, assembly, operation, repair, testing, maintenance or modification of defense articles, including information in the form of blueprints, drawings, photographs, plans, instructions or documentation;
    (b) Classified information relating to defense articles and defense services on the USML; and
    (c) Software directly related to defense articles.
**Note**: The definition does **not** include commonly taught information concerning general scientific, mathematical, or engineering principles, nor does it include basic marketing information on function or purpose or general system descriptions.

"*U.S. person*" (ITAR §120.15) means a person who is a lawful permanent resident (as defined by 8 U.S.C. 1101(a)(20)) or who is a protected individual (as defined by 8 U.S.C. 1324b(a)(3)). It also means any corporation, business association, or other entity, organization, or group that is incorporated to do business in the United States, including any governmental (federal, state or local) entity.

"*Foreign person*" (ITAR §120.16) means any natural person who is not a lawful permanent resident (as defined by 8 U.S.C. 1101(a)(20)) or who is not a protected individual (as defined by 8 U.S.C. 1324b(a)(3)). It also means any foreign corporation, business association, any other entity that is not incorporated or organized to do business in the United States, as well as international organizations, foreign governments and any agency or subdivision of foreign governments (e.g., diplomatic missions).

"*Broker*" (ITAR §129.2(a)) means any person described below who engages in the business of brokering activities:
    (a) Any U.S. person wherever located;
    (b) Any foreign person located in the United States; or
    (c) Any foreign person located outside the United States where the foreign person is owned or controlled by a U.S. person.

"*Brokering activities*" (ITAR §129.2(b)) means any action on behalf of another to facilitate the manufacture, export, permanent import, transfer, reexport, or retransfer of a <u>U.S. or foreign</u> defense article or defense service, regardless of its origin.
    Such action includes, but is not limited to:

      (a) Financing, insuring, transporting, or freight forwarding defense articles and defense services; or

      (b) Soliciting, promoting, negotiating, contracting for, arranging, or otherwise assisting in the purchase, sale, transfer, loan, or lease of a defense article or defense service.

Such action does **not** include:

      (a) Activities by regular employees acting on behalf of their employer; or

      (b) Activities that do not extend beyond administrative services, such as, collecting product and pricing information to prepare a response to Request for Proposal, generally promoting company goodwill at trade shows. Activities performed by an affiliate, on behalf of another affiliate.

**Note**: engaging in the business of brokering activities requires only one occasion of brokering.

If you or your prospective employer are unsure whether your proposed employment would include the provision of defense services or brokering controlled under the ITAR, you may submit to DDTC a written request for an advisory opinion. The request to issue such an advisory opinion should include comprehensive information about the scope and details of your proposed activities. More information, including the ITAR and the relevant mailing address, can be found on DDTC's website: www.pmddtc.state.gov.