## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **WP COMPANY LLC**<br>**d/b/a THE WASHINGTON POST**,<br><br>Plaintiff,<br><br>v.<br><br>**U.S. DEPARTMENT OF DEFENSE, et al.,**<br><br>Defendants. | Case No. 21-cv-1025-APM<br><br>Oral Argument Requested |

## REPLY MEMORANDUM IN FURTHER SUPPORT OF
## PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

BALLARD SPAHR LLP

Charles D. Tobin (#455593)
Maxwell S. Mishkin (#1031356)
Emmy Parsons (#1026101)
1909 K Street, NW, 12th Floor
Washington, DC 20006
Telephone: (202) 661-2200
Fax: (202) 661-2299
tobinc@ballardspahr.com
mishkinm@ballardspahr.com
parsonse@ballardspahr.com

*Counsel for Plaintiff WP Company LLC,*
*d/b/a The Washington Post*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES..................................................................................................ii

PRELIMINARY STATEMENT ............................................................................................1

ARGUMENT ..........................................................................................................................2

I.   DEFENDANTS HAVE NOT JUSTIFIED THE EXEMPTION 6
     WITHHOLDINGS ........................................................................................................2

     A.   Defendants Must Disclose Foreign Pay Information For All FGE
          Applicants ...........................................................................................................3

     B.   Defendants Cannot Categorically Withhold The Names Of FGE
          Applicants ...........................................................................................................6

     C.   Defendants Cannot Withhold The Security Clearances Of FGE
          Applicants ...........................................................................................................8

II.  THE ARMY AND NAVY STILL HAVE NOT JUSTIFIED THEIR
     EXEMPTION 5 WITHHOLDINGS .............................................................................9

     A.   Attorney-Client Privilege Does Not Protect The Withheld Memoranda ................9

     B.   The Army And Navy Cannot Withhold The Memoranda In Full .......................11

III. THE AIR FORCE AND THE STATE DEPARTMENT HAVE NOT
     DEMONSTRATED THAT THEIR SEARCHES WERE ADEQUATE ........................12

     A.   The Air Force Concedes Its Search Was Inadequate ..........................................12

     B.   The State Department Has Not Demonstrated That Its Search For
          Responsive Records Was Adequate ...................................................................13

          1.   The *Post* did not agree to receive only a subset of the State
               Department's final determination letters ................................................13

          2.   The *Post* has presented concrete evidence that the State
               Department's search was unreasonable ...................................................14

CONCLUSION.....................................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*ACLU v. Department of Justice*,
   655 F.3d 1 (D.C. Cir. 2011).................................................................................................5

*\*American Immigration Lawyers Association v. Executive Office for Immigration Review*,
   830 F.3d 667 (D.C. Cir. 2016) ................................................................................... 2, 6, 7, 9

*Campbell v. Department of Justice*,
   164 F.3d 20 (D.C. Cir. 1998)...............................................................................................15

*Chang v. Department of the Navy*,
   314 F. Supp. 2d 35 (D.D.C. 2004) ........................................................................................7

*Coastal States Gas Corp. v. Department of Energy*,
   617 F.2d 854 (D.C. Cir. 1980) ............................................................................................10

*Cottone v. Reno*,
   193 F.3d 550 (D.C. Cir. 1999) ............................................................................................11

*CREW v. Department of Justice*,
   746 F.3d 1082 (D.C. Cir. 2014) ............................................................................................5

*District of Columbia v. Trump*,
   315 F. Supp. 3d 875 (D. Md. 2018) .............................................................................. 1, 4, 6

*Johnson v. Executive Office for U.S. Attorneys*,
   310 F.3d 771 (D.C. Cir. 2002) ............................................................................................11

*\*Jurewicz v. Department of Agriculture*,
   741 F.3d 1326 (D.C. Cir. 2014) ............................................................................................6

*Krikorian v. Department of State*,
   984 F.2d 461 (D.C. Cir. 1993) ............................................................................................15

*National Archives & Records Administration v. Favish*,
   541 U.S. 157 (2004)..............................................................................................................5

*Public Citizen, Inc. v. OMB*,
   598 F.3d 865 (D.C. Cir. 2009) ..............................................................................................2

*Reporters Committee for Freedom of the Press v. FBI*,
   3 F.4th 350 (D.C. Cir. 2021)...............................................................................................11

*Savage v. Department of the Navy*,
 2021 U.S. Dist. LEXIS 169603 (D.D.C. Sept. 8, 2021) ........................................................7

*\*Schlefer v. United States*,
 702 F.2d 233 (D.C. Cir. 1983) ................................................................................... 10, 11

*Tax Analysts v. IRS*,
 117 F.3d 607 (D.C. Cir. 1997) ..............................................................................................10

*Valencia-Lucena v. Coast Guard*,
 180 F.3d 321 (D.C. Cir. 1999) ................................................................................................2

*WP Co. LLC v. SBA*,
 2021 U.S. Dist. LEXIS 131604 (D.D.C. July 15, 2021) ......................................................12

**Statutes and Other Authorities**

5 U.S.C. § 552(b) ..............................................................................................................11

5 C.F.R. § 2634.202(c) ........................................................................................................3

Federalist No. 51 (James Madison)....................................................................................4

**PRELIMINARY STATEMENT**

In their Opposition ("Opp."), Dkt. 27, Defendants fail in three principal ways to justify withholding critical information about the foreign government employment ("FGE") process, the constitutionally-required system in which retired members of the U.S. Armed Forces seek permission to offer their unique American military experiences to foreign governments for pay.

**First**, Defendants do not dispute that these payments are "foreign emoluments," which the Constitution treats as presumptively improper, or that the Framers required such payments be approved on a case-by-case basis because they were "deeply concerned that foreign interests would try to use their wealth to tempt public servants and sway the foreign policy decisions of [our] government." *District of Columbia v. Trump*, 315 F. Supp. 3d 875, 896 (D. Md. 2018). Yet Defendants argue that the public interest in learning how and why they approve or reject FGE applications must take a back seat to the former officers' desire to remain anonymous or to keep secret the dollar amounts they stand to receive. Because the public cannot meaningfully evaluate how Defendants are fulfilling their statutory duties without the names of the FGE applicants and the size of the payments they expect to collect, Defendants cannot withhold that information under Exemption 6. Defendants likewise cannot withhold information about the security clearances these applicants held because the public interest in that information is high and the privacy interest in that information is low. Indeed, several Defendants have, despite their arguments here, already released this information.

**Second**, even with their supplemental submissions, Defendants have failed to justify their withholding in full of certain FGE-related memoranda under Exemption 5. Defendants have not established that any of these records satisfy the elements for attorney-client privilege, and FOIA

1

requires that even if some portion of the records reflect a deliberative process, Defendants still must release all reasonably segregable portions of the records that are not exempt.

**Third**, Defendants have conceded – expressly and implicitly – that certain of their searches were <u>not</u> reasonably calculated to uncover all responsive documents. They have agreed that the Air Force will conduct a supplemental search to remedy its insufficient effort, and the Court now should direct the State Department to take the same remedial step.

For these reasons and as set forth below, the Court should deny Defendants' motion for summary judgment, grant the *Post*'s cross-motion for summary judgment, order Defendants to release the information they have improperly withheld and conduct supplemental searches for responsive records, and allow the *Post* to recover the expenses of litigating this FOIA suit.

## ARGUMENT

Defendants have failed to rebut FOIA's "presumption in favor of disclosure" that underlies FOIA's objective "'to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny.'" *Pub. Citizen, Inc. v. OMB*, 598 F.3d 865, 869 (D.C. Cir. 2009) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 360-61 (1976)). Defendants also have failed to carry their burden to "demonstrate beyond material doubt" that their searches for FGE records were "reasonably calculated to uncover all relevant documents." *Valencia-Lucena v. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999).

## I.   DEFENDANTS HAVE NOT JUSTIFIED THE EXEMPTION 6 WITHHOLDINGS

Defendants fail to carry their burden under Exemption 6 to show that releasing (1) the specific salary information of FGE applicants who held the rank of O-7 and higher and (2) the names and other identifying information of FGE applicants who held a rank of O-6 and lower "would rise to the level of a clearly unwarranted invasion of personal privacy" when balanced against "the public interest in disclosure." *Am. Immigration Lawyers Ass'n v. Exec. Office for*

2

*Immigration Review*, 830 F.3d 667, 673-74 (D.C. Cir. 2016) (internal marks omitted). The privacy interest in this information is minimal and the public interest is maximal.

### A.     Defendants Must Disclose Foreign Pay Information For All FGE Applicants

As the *Post* explained in its opening brief, for FGE applicants ranked O-7 and higher – *i.e.*, retired admirals and generals – the privacy interest in the dollar amounts they expect to receive from foreign governments is modest, while the public interest in that pay information is substantial. Defendants offer no cogent response on either sides of the balancing scale.

On the privacy side, as the *Post* has explained, *see* Mem. in Supp. of the Post's Cross-Mot. for Summ. J. ("Mem.") at 12-14, Dkt. 23-1, these senior military officials did not have a meaningful expectation of privacy in their compensation when they were in active service because they were required to file annual public financial disclosures, *see* 5 C.F.R. § 2634.202(c). And as Defendants concede, the Government can recall these officials back to active service any time circumstances require, at which point they "will again be subject to applicable regulations regarding disclosure of financial information." *See* Opp. at 7. Even after retiring, therefore, the possibility of returning to service and restarting the public disclosure process hangs over these senior FGE applicants, diminishing any reasonable expectation of privacy they might have in the terms of the deals they strike with foreign powers in the interim.

Defendants evasively recast the *Post*'s argument rather than address it.[1] The *Post* has consistently argued that the privacy interest senior FGE applicants have in their proposed salaries is "minimal" or not "substantial" or "far less . . . than ordinary private citizens" have. *See* Mem.

---

[1] The *Post* has not taken the "position that the retired senior military officials have 'no privacy interest' in their private salary information." Opp. at 7. Indeed, the *Post* never used the phrase "no privacy interest" even though the Defendants here have placed quotes around it. *Id.*

3

at 2, 10, 12, 14. Because Defendants are challenging a position that the *Post* has not actually taken, they never explain why they believe the *Post* underweighted the relevant privacy interest.

On the public interest side, the *Post* has shown that the public has a compelling interest in understanding the extent of influence that foreign powers may have over America's former military leaders, and the public cannot measure that extent unless it knows how much money the foreign governments are actually paying those former officials. Mem. at 15-17. The *Post* has, of course, not questioned "the patriotism of our former military officials" or accused any FGE applicants of "sell[ing] out their country," as the Defendants assert. Opp. at 13-14.[2] Defendants can hardly deny that, all else equal, a high-paying foreign government employer will likely have more influence over the individuals on its payroll than a low-paying foreign government employer. *See, e.g.*, *Trump*, 315 F. Supp. 3d at 897 (quoting from Federalist No. 79 that "power over a man's subsistence amounts to a power over his will"). Nor can Defendants deny that the public has an interest in knowing whether Defendants are approving foreign government employment by senior retired officers who stand to be handsomely paid for this work. Yet Defendants have prevented the public from learning which foreign government employers are high-paying and which are not.

Moreover, Defendants nowhere contest that, as the *Post* argues, the FGE payment information will inform the public about how FGE approval process works, including what factors the Defendants take into account, and how they are weighted, in deciding whether to approve an FGE application – issues into which the public currently has effectively no insight.

---

[2] If patriotism alone were enough to guarantee that former military officials not feel any influence from the foreign powers paying their salaries, however, there would be no need for the Foreign Emoluments Clause in the first place. *Cf.* Federalist No. 51 (James Madison) ("If men were angels, no government would be necessary.").

4

*See, e.g.*, Mem. at 15 ("Knowing the amount of foreign pay in question is thus essential to understanding how Defendants evaluate and adjudicate FGE applications").  And contrary to the Defendants' argument, *see* Opp. at 13, in pursuing transparency the *Post* does not assert government misconduct and trigger the *Favish* standard.[3]  As the D.C. Circuit has explained, *Favish* does not apply where, as here, the plaintiff is not "seeking to show that the government's . . . policy is legally improper, but rather to show what that policy is and how effective . . . it is." *ACLU v. Dep't of Justice*, 655 F.3d 1, 14 (D.C. Cir. 2011) (Garland, J.); *see also CREW v. Dep't of Justice*, 746 F.3d 1082, 1095 (D.C. Cir. 2014) (rejecting application of *Favish* test where, as here, plaintiff "alleges no impropriety on the part of the [government]" and "it has nonetheless established a sufficient reason for disclosure independent of any impropriety").

Finally, in a last-ditch attempt to avoid the conclusion that Exemption 6 weighs in favor of disclosure here, Defendants claim that even if the public <u>does</u> have an interest in monitoring these foreign emoluments, the Court still should not incorporate that interest in the Exemption 6 balancing test, because – according to Defendants – "[t]he monetary temptations that former senior military officials may or may not face in no way implicate the Defendant agencies' adjudication of foreign government employment applications or the performance of their statutory duties."  Opp. at 14.  To the contrary, in reviewing FGE applications, Defendants are carrying out their duties under 37 U.S.C. § 908, in which Congress delegated to Defendants the constitutional duty to review foreign emoluments.  Assessing "the monetary temptations that former senior military officials may or may not face" is therefore part and parcel of that statutory (and ultimately constitutional) obligation.[4]

---

[3] *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004).

[4] Indeed, the Defendants' role in reviewing FGE applications is grounded in the Framers' concerns about potential "monetary temptations."  The Framers included the Foreign

5

The balance makes clear that the substantial public interest in the foreign payment amounts outweighs the minimal privacy interest in continuing to keep that information secret. Because knowing the amount of foreign pay will "shed[] light on government activities and . . . would appreciably further public understanding of the government's actions," *Jurewicz v. Dep't of Agric.*, 741 F.3d 1326, 1333-34 (D.C. Cir. 2014) (internal marks and citation omitted), the Court should conclude that Exemption 6 compels Defendants to disclose the foreign payment amounts for all FGE applicants.

### B. Defendants Cannot Categorically Withhold The Names Of FGE Applicants

Similarly, for FGE applicants ranked O-6 and lower, Defendants continue to err by categorically withholding their names and other identifying information. The law in this Circuit is clear that the government cannot categorically withhold information under Exemption 6 unless it has made "a sufficient showing that the balancing analysis under Exemption 6 would yield a uniform answer across the entire proffered category, regardless of any variation among the individual records or persons falling within it." *Am. Immigration Lawyers Ass'n*, 830 F.3d at 675. There, the D.C. Circuit rejected the categorical withholding of the names of immigration judges because "variations in the privacy and public interests at stake leave [the court] unable to find, at least as a blanket matter, that the Exemption 6 balance tips in favor of withholding [the] names in all circumstances." *Id.* at 676.

Defendants' categorical withholding of FGE applicant names here fails for the same reason: Defendants have not shown that the Exemption 6 balancing test would uniformly weigh in favor of withholding the name of every FGE applicant ranked O-6 and lower. Rather,

---

Emoluments Clause in the Constitution "to protect against 'foreign influence of every sort.'" *Trump*, 315 F. Supp. 3d at 897 (quoting Joseph Story, 3 Commentaries of the Constitution 215-16 (1833)).

6

Defendants concede that, in appropriate circumstances, the public-private balancing weighs in favor of <u>disclosing</u> the names of service members below the O-6 rank. Defendants acknowledge, for example, that in *Chang v. Department of the Navy*, 314 F. Supp. 2d 35 (D.D.C. 2004), the court approved releasing the name of an officer at the O-5 level because, in Defendants' words, his "unique professional history increased the public interest in the release of his identifying information, thereby overcoming the privacy interest traditionally held by lower-ranked officers in the non-release of such information." Opp. at 9-10. In discussing *Savage v. Department of the Navy*, 2021 U.S. Dist. LEXIS 169603 (D.D.C. Sept. 8, 2021), Defendants likewise acknowledge that "it may be appropriate in unique and finite circumstances" to release the names of officers ranked O-6 or below, including because of "'their position and duties.'" Opp. at 9 (quoting *Mem. for DOD FOIA Offices* at 2, Office of the Sec. of Def. (Nov. 9, 2001), Dkt. 21-8). Defendants thus effectively acknowledge that their categorical withholdings are improper.

Moreover, the Defendants cite a policy memorandum, *see* Opp. at 10 n.8, that rejects the same categorical withholding that Defendants urge here. The memorandum recognizes that releasing identifying information about "officials below the office director level" <u>is</u> appropriate when circumstances warrant. *See Mem. for Secs. of the Mil. Dep'ts.* at 1-2, Office of the Sec. of Def. (Sept. 1, 2005), Dkt. 21-8.

Defendants cannot and do not deny there are variations in the privacy and public interests at stake in withholding the names of officers ranked O-6 and lower. Such variations mean that Defendants have failed to justify their categorical withholding of these names. *See Am. Immigration Lawyers Ass'n*, 830 F.3d at 675-76.

7

### C.     Defendants Cannot Withhold The Security Clearances Of FGE Applicants

Defendants have likewise failed to justify their categorical withholding, under Exemption 6, of security clearance information about FGE applicants ranked O-7 and higher. For one, Defendants claim that their opening brief "established that the service branches had properly withheld the security clearances for retired military officials who held the rank of O-7 and higher," *see* Opp. at 15, but the record before the Court makes clear the service branches did not, in fact, uniformly withhold this information. Rather, the Navy and the Marines have <u>released</u> security clearance information for all FGE applicants ranked O-7 and above, while the Army and Air Force withheld that information. *See* Second Declaration of Craig Whitlock ("Second Whitlock Decl.") ¶ 3. Defendants offer no rationale for this inconsistent treatment of security clearance information, which undermines their argument that FGE applicants "have a substantial privacy interest" in this information.

On the public interest side of the balancing test, Defendants essentially argue that (1) the public already has enough information to evaluate the FGE application process without knowing the security clearances of high-ranking applicants; and (2) the "potential adverse consequences" of releasing this information weigh against disclosure. *See* Opp. at 16. Those arguments, however, are at cross-purposes. Consider for example retired four-star Army Gen. Keith Alexander, who applied to work, *inter alia*, as a consultant for the Kingdom of Saudi Arabia, specifically the Mohammed Bin Salman College of Cyber Security, Artificial Intelligence, and Advanced Technologies. *See* Tobin Decl. Ex. 3 at 1, Dkt. 23-6. Defendants withheld Gen. Alexander's security clearance information, but no "adverse consequences" or invasion of personal privacy could conceivably arise from knowing that the former director of the National Security Agency had Top Secret / Sensitive Compartmented Information ("TS/SCI") clearance.

8

If by some chance Gen. Alexander had anything <u>less</u> than TS/SCI clearance, however, that surprising fact would provide the public new and important information in evaluating Defendants' approval of his FGE applications, because any issue that would cause such a senior intelligence official to have less than the highest security clearance would surely also bear on the decision to allow that same senior intelligence official to work for a foreign power. Defendants' withholding of security clearance information for retired Air Force Lt. Gen. James Clapper, the former Director of National Intelligence, suffers from the same problem.

At a minimum, these examples illustrate there are "variations in the privacy and public interests at stake" in withholding security clearance information for FGE applicants ranked O-7 and higher, and once again such variations mean that Defendants cannot justify their categorical withholding of security clearance information. *Am. Immigration Lawyers Ass'n*, 830 F.3d at 675-76. And as the disclosures of the Navy and the Marines suggest, categorical <u>production</u> of security clearance information is unlikely to seriously implicate the privacy interests of FGE applicants ranked O-7 and higher.

## II. THE ARMY AND NAVY STILL HAVE NOT JUSTIFIED THEIR EXEMPTION 5 WITHHOLDINGS

Even though the Army and Navy have submitted supplemental declarations to support their Exemption 5 withholdings, they still have not carried their burden to establish that (1) these withholdings are protected by the attorney-client privilege, and (2) they cannot segregate and produce any portions of the material that are not protected by the deliberative process privilege.

### A. Attorney-Client Privilege Does Not Protect The Withheld Memoranda

In its prior brief, the *Post* demonstrated that the Army and Navy had failed in two ways to justify withholding memoranda under Exemption 5 as attorney-client privileged. Mem. at 28-30. **First**, because the memoranda are based on information provided by the FGE applicants, not by

9

the agency "clients" of the drafting attorneys, the memoranda fall outside the scope of the privilege. *See Schlefer v. United States*, 702 F.2d 233, 245 (D.C. Cir. 1983) (Ginsburg, J.) (attorney-client privilege does not apply where withheld factual information was provided "by a third party – the outsider who seeks a ruling from the Agency"); *Tax Analysts v. IRS*, 117 F.3d 607, 619 (D.C. Cir. 1997) ("To the extent that the legal conclusions in [withheld records] are based upon information obtained from taxpayers, *Schlefer* holds that the attorney-client privilege does not apply."). **Second**, the Army and Navy failed to show that these memoranda qualify for protection under the attorney-client privilege because they had not established confidentiality, which is "a fundamental prerequisite to assertion of the [attorney-client] privilege." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 863 (D.C. Cir. 1980).

In their Opposition and supplemental declarations, Defendants do not substantively respond to the first of these two points. Indeed, they concede that "[k]ey facts from the application file are one of the datapoints that would have been considered by attorneys in formulating the memoranda." Opp. at 2. Defendants then claim that "attorneys also necessarily would have considered other facts originating from agency personnel," *see id.*, but they cite nothing at all – let alone any material in the record – in support of the vague and conclusory proposition that agency personnel provided "other facts."

The Army's and Navy's supplemental proofs do not support Defendants on this point, either. The declarants simply assert that "[a]lthough the agency attorneys who prepared the memoranda cite facts from the applications, this is typically done as part and parcel of an assessment and recommendation as to whether the application is legally sufficient and should be approved," which says nothing about alleged "other facts" derived from sources other than the applicant. *See* Suppl. Decl. of Ann Oakes ¶ 6, Dkt. 27-2; Suppl. Decl. of Maj. Robert Weld ¶ 5,

10

Dkt. 27-3. Because Defendants have failed to establish that these memoranda are "based on confidential information provided by the client," *see Schlefer*, 702 F.2d at 245, they cannot withhold them under Exemption 5 as attorney-client privileged.[5]

### B. The Army And Navy Cannot Withhold The Memoranda In Full

Defendants do not dispute, nor could they, that under FOIA they are obliged to produce "[a]ny reasonably segregable portion of a record . . . after deletion of the portions which are exempt." 5 U.S.C. § 552(b). And as the *Post* has explained, *see* Mem. at 30-31, even if Defendants could withhold some portions of these memoranda under Exemption 5 and the deliberative process privilege, other portions reflecting "factual information generally must be disclosed." *Reporters Comm. for Freedom of the Press v. FBI*, 3 F.4th 350, 365 (D.C. Cir. 2021) (quoting *Petroleum Info. Corp. v. Dep't. of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992)).

In their Opposition, however, Defendants claim, with no support, they cannot produce any portion of these records because "any factual information in the legal memoranda are inextricably intertwined with the legal analysis and deliberative discussion." Opp. at 4; *see also* Suppl. Oakes Decl. ¶ 7 ("The factual references, however, are inextricably intertwined with legal analysis and deliberative, pre-decisional discussion, and the exempt portions cannot be segregated from the non-exempt portions."); Suppl. Wald Decl. ¶ 6 (same). To withhold a responsive record in its entirety, however, "the agency must provide a 'detailed justification' for its non-segregability." *Johnson v. Exec. Office for U.S. Attys.*, 310 F.3d 771, 776 (D.C. Cir.

---

[5] The Army's and Navy's declarants also state that "to the extent that the facts referenced in the memoranda were provided by an applicant, the same facts have been produced to Plaintiff as part of the applications themselves." *See* Suppl. Oakes Decl. ¶ 7; Suppl. Weld Decl. ¶ 6. If Defendants have already released this information in some records, however, that undermines their argument for withholding it in these records. *See, e.g.*, *Cottone v. Reno*, 193 F.3d 550, 554 (D.C. Cir. 1999) (records that otherwise may be exempt from disclosure under FOIA "lose their protective cloak once disclosed and preserved in a permanent public record").

2002) (emphasis added) (quoting *Mead Data Ctr. Inc. v. Dep't of the Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977)). These boilerplate assertions thus do not suffice. *See, e.g.*, *WP Co. LLC v. SBA*, 2021 U.S. Dist. LEXIS 131604, at *32 (D.D.C. July 15, 2021) (noting that the government "must provide a detailed justification and not just conclusory statements to demonstrate that all reasonably segregable information has been released," and rejecting an agency's "thin submissions as to its own inability to" segregate exempt and non-exempt information) (internal marks omitted).

Because the Army and Navy have still failed to show that the withheld memoranda contain no reasonably segregable portions, particularly no factual information outside the scope of the deliberative process privilege, the Court should order the Army and Navy to promptly produce all such non-exempt portions of these memoranda to the *Post* as FOIA requires.

### III. THE AIR FORCE AND THE STATE DEPARTMENT HAVE NOT DEMONSTRATED THAT THEIR SEARCHES WERE ADEQUATE

#### A. The Air Force Concedes Its Search Was Inadequate

Defendants effectively concede that the Air Force's search was <u>not</u> adequate because it failed to include records in the possession of the Air Force Review Boards Agency ("SAF/MRB"). Opp. at 17 (citing Decl. of M. Harris ("Harris Decl.") ¶ 4, Dkt. 27-1).

To date, the Air Force has produced to the *Post* records related to 56 FGE applications. Decl. of Joanne Collins ¶¶ 21-23, Dkt. 21-2. According to the Harris Declaration, however, "[a]n initial search by SAF/MRBB identified 215 applications submitted between 2015 [and] 2020." Harris Decl. ¶ 5. That figure – 215 – matches the total number of FGE applications the Air Force received during that period, according to data that the *Post* separately obtained from the Air Force. *See* Decl. of Craig Whitlock ¶ 4, Ex. A, Dkt. 23-13 (showing that between 2015

12

and 2020 the Air Force received 215 FGE applications). The Air Force has not, therefore, produced or accounted to the Court and the *Post* for 159 applications.

Because the Air Force has effectively conceded its search was inadequate for failure to include SAF/MRB records, the Court should deny summary judgment for Defendants on this point, with leave to renew their motion following completion of these supplemental searches.

### B. The State Department Has Not Demonstrated That Its Search For Responsive Records Was Adequate

#### 1. The *Post* did not agree to receive only a subset of the State Department's final determination letters.

Defendants concede they have not produced all FGE final determination letters ("FGE letters") that are responsive to the *Post*'s request, yet they argue that the State Department conducted a reasonable search for responsive records because of an agreement between the parties. Opp. at 18. The parties did agree that the State Department would produce "just the FGE Letters" prior to the Court's ruling on these cross-motions for summary judgment. *Id*. But the *Post* did not agree, as Defendants now erroneously suggest, to receive only a subset of these FGE letters, namely "just the FGE Letters identified in connection with" a separate FOIA lawsuit that the Project On Government Oversight filed against the State Department. *Id*.

The Joint Status Report that memorializes the parties' agreement does not convey that the State Department would produce only those FGE letters that were responsive to another lawsuit. *See generally* Joint Status Rept., Dkt. 18. Rather, as the Joint Status Report makes clear, the parties agreed that the State Department would "process and produce the agency's Foreign Government Employment final determination letters, so that any disputes regarding [the State Department's] Exemption 6 withholdings from those records can be included in the parties' upcoming dispositive motion briefing." *Id*. at 2. Moreover, in reaching the agreement at issue, undersigned counsel expressly noted that "by agreeing to receive final determination letters first,

13

the *Post* is not shifting from its position that State must ultimately process and produce all non-exempt responsive records in its files unless they duplicate what the other defendants are processing." *See* Second Decl. of Charles D. Tobin ¶ 1 & Ex. A at 1.[6] Indeed, the State Department's own declarant notes that the Department represented it had located and would produce "the full universe of FGE letters." Suppl. Decl. of Susan C. Weetman ("Second Weetman Decl.") ¶ 6, Dkt. 27-4 (emphasis added).

Nothing about the parties' agreement excused the State Department from searching for, and producing, all responsive FGE letters to the *Post*. The Court should therefore deny Defendants' motion for summary judgment on this basis as well.

### 2. The *Post* has presented concrete evidence that the State Department's search was unreasonable.

According to Defendants, the service branches sent to the State Department 514 FGE applications between Jan. 1, 2015 and April 16, 2021, but the State Department has produced to the *Post* only "401 'final determination letters' for FGE applications that were referred to the State Department by the Army, Navy, Air Force or Marines." Defs.' Resp. to Pl.'s SUMF ¶¶ 44-45, Dkt. 27-5 (citing Whitlock Decl. ¶¶ 3-11, 13 & Exs. A-D) (emphasis added). By Defendants' own admission, therefore, the State Department has failed to produce 113 responsive FGE letters. Moreover, at least 49 of the FGE letters that the State Department produced are dated prior to 2015, *see* Second Whitlock Decl. ¶ 4, meaning the true number of

---

[6] The *Post* therefore expects that the State Department will ultimately process and produce all such responsive, non-duplicative records – including, for example, 60 FGE application packages that the *Post* has determined the Army failed to produce – but that, according to a spreadsheet separately produced to the *Post* by the Army, the Army sent to the State Department. *See* Whitlock Decl., Ex. B (noting that between 2015 and 2021, the Army sent to the State Department 216 FGE applications, even though according to a review of the records received by the *Post*, the Army has produced only 156 applications).

14

missing responsive FGE letters is at least 162, or nearly one-third of all such responsive FGE letters.

Defendants argue that the State Department's failure to produce such a large amount of responsive FGE letters is "irrelevant to the adequacy of the State Department's search." Opp. at 19. But the D.C. Circuit has stated that "[i]f there is substantial doubt in the record as to the adequacy of the search, summary judgment cannot be granted to the agency," *Krikorian v. Dep't of State*, 984 F.2d 461, 468 (D.C. Cir. 1993), and the record here provides ample reason to doubt the adequacy of the State Department's search. Most importantly, the State Department assumed in designing its search that the "Bureau of Political Military Affairs ('PM') was reasonably likely to have the FGE Letters," *see* Second Weetman Decl. ¶ 7, but "that assumption became untenable once the [State Department] discovered information suggesting the existence of documents that it could not locate without expanding the scope of its search," *see Campbell v. Dep't of Justice*, 164 F.3d 20, 28 (D.C. Cir. 1998). In other words, because the "reasonableness of an agency's search [is] based on what the agency knew at its conclusion rather than what the agency speculated at its inception," *id.*, once the State Department realized that it had failed to uncover and produce at least 113 responsive FGE letters to the *Post*, it was obligated to conduct a further search for responsive records. The Department's failure to conduct that additional search renders its search inadequate, and summary judgment in favor of Defendants would, on this basis as well, be improper.

## CONCLUSION

For the foregoing reasons and those set forth in its prior brief, the *Post* respectfully requests that its cross-motion for summary judgment be granted, that Defendants' motion for summary judgment be denied, that Defendants be ordered to release the requested records and to

15

conduct reasonable searches for any additional responsive material as described above, and that the *Post* be awarded the costs and attorneys' fees that it has reasonably incurred in this action.

Dated: March 11, 2022

Respectfully submitted,

BALLARD SPAHR LLP

/s/ *Charles D. Tobin*
Charles D. Tobin (#455593)
Maxwell S. Mishkin (#1031356)
Emmy Parsons (#1026101)
1909 K Street, NW, 12th Floor
Washington, DC 20006
Telephone: (202) 661-2200
Fax: (202) 661-2299
tobinc@ballardspahr.com
mishkinm@ballardspahr.com
parsonse@ballardspahr.com

*Counsel for Plaintiff WP Company LLC
d/b/a The Washington Post*

16