**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| _____ ) | |
| WP COMPANY LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **Civil No. 21-cv-01025 (APM)** |
| ) | |
| U.S. DEPARTMENT OF DEFENSE et al., ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

**I.     INTRODUCTION**

It is not unusual for U.S. military personnel to work for and be paid by foreign governments after they retire.  Before they accept such employment, however, the former member must secure approval from the Secretary of the military branch in which they served and the Department of State.  The need for such consent is rooted in the Constitution itself.  The Foreign Emoluments Clause of the Constitution prohibits any person holding an "Office of Profit or Trust" from accepting any payment from a foreign state "without the Consent of Congress."  U.S. CONST. art. I, § 9, cl. 8.  Retired military personnel remain subject to recall to active duty and, because of that status, they are deemed to continue to occupy an "office of profit or trust" under the Constitution, even in retirement.  So, if a retired member of the U.S. military wishes to work for and receive compensation from a foreign government, she must obtain the approval of Congress.  By statute, Congress has provided blanket consent for retired members of the military to accept "civil employment (and compensation for that employment)" so long as they receive approval from the

Secretary of the military branch in which they served and from the Secretary of State.  37 U.S.C. § 908(a)–(b).

This case is about the records held and created by the Executive Branch when a former member of the military seeks approval to work for a foreign government.  In October 2020, Plaintiff WP Company LLC—*The Washington Post* (the "*Post*")—submitted a series of Freedom of Information Act ("FOIA") requests to various components of the Department of Defense ("DOD") and the State Department, seeking seven years of records mentioning applications for foreign employment, including all approvals and denials of such requests.  Only after filing this action did the agencies meaningfully start to produce records, but they withheld certain key categories of information.  Specifically, they withheld (1) pay and security-clearance level information of applicants ranked O-7 or higher under Exemption 6 but not their names; (2) the names of applicants ranked O-6 or lower also under Exemption 6 but not their pay information; and (3) memoranda from certain DOD components that analyze and make recommendations on applications under Exemption 5.  The *Post* now challenges these withholdings, as well as the scope of some searches.

Before the court are the parties' cross-motions for partial summary judgment.  For the reasons that follow, the court grants the *Post*'s motion and denies Defendants' motion, except as to the limited information withheld under Exemption 7(C).  The court declines to resolve the parties' dispute over the adequacy of the State Department's search at this juncture.

## II.    BACKGROUND

### A.    Applications to Work for Foreign Governments

The Foreign Emoluments Clause provides that "no Person holding any Office of Profit or Trust under them, shall, without the Consent of the Congress, accept of any present, Emolument,

Office, or Title, of any kind whatever, from any King, Prince, or foreign State." U.S. CONST. art. I, § 9, cl. 8.  Retired members of the armed forces are treated as "holding any Office of Profit or Trust."  That is because retirement from the military does not necessarily mean the end of active service.  "A retired member of the Regular Army, Regular Navy, Regular Air Force, Regular Marine Corps, or Regular Space Force" "may be ordered to active duty by the Secretary of the military department concerned at any time."  10 U.S.C. § 688(a)–(b)(1).  Because of such recall status, DOD has said that "retired regular military officers are . . . . subject to the Emoluments Clause." *Application of the Emoluments Clause to DoD Civilian Employee and Military Personnel* at 4, DOD STANDARDS OF CONDUCT OFF., https://dodsoco.ogc.osd.mil/Portals/102/ emoluments_clause_applications.pdf (last visited Sept. 8, 2022) (emphases omitted).  So, too, are "[r]etired regular military enlisted personnel." *Id.* (emphases omitted).

Congress has delegated the authority to consent to foreign employment requests to the Secretaries of the military branches and the Secretary of State. *See* 37 U.S.C. § 908.  Each military branch has set up its own process to receive and review those requests.  *See Summary of Emoluments Clause Restrictions* at 1–2, DOD STANDARDS OF CONDUCT OFF., https://dodsoco.ogc.osd.mil/Portals/102/summary_emoluments_clause_restrictions.pdf (last visited Sept. 8, 2022).  The State Department, through the Office of State-Defense Integration, begins its review process "following approval of the request by the relevant branch of the Armed Services."  *About Us – Office of State Defense-Integration*, U.S. DEP'T OF STATE, https://www.state.gov/bureau-of-political-military-affairs-office-of-state-defense-integration-pm-sdi/ (last visited Aug. 16, 2022).

### B.     The *Post*'s FOIA Request

In October 2020, *The Washington Post* filed a series of FOIA requests seeking information about applications for foreign government employment submitted to DOD and the State Department by retired servicemembers from January 1, 2015 to present.  Compl. for Decl. & Inj. Relief, ECF No. 1, ¶¶ 25–34.  Only the U.S. Department of the Navy (the "Navy," on behalf of the Marines) produced some records.  *See id.*  After the *Post* attempted unsuccessful administrative appeals, *id.* ¶¶ 40–52, it filed this action in April 2021.  Defendants are DOD, the U.S. Department of the Air Force (the "Air Force"), the Navy, the U.S. Department of the Army ("the Army"), and the State Department.

In the ensuing five months, the military departments produced various records to the *Post. See* Joint Status Report, ECF No. 18 [hereinafter JSR].  With respect to the State Department, the parties agreed that the agency would produce final determination letters but hold off on disclosing any applications pending the outcome of the cross-motions for partial summary judgment.  *Id.* at 2. Those motions are now before the court. See Defs.' Mot. for Partial Summ. J., ECF No. 21 [hereinafter Defs.' Mot.]; Pl.'s Cross-Mot. for Summ. J. & Opp'n to Def.'s Mot., ECF No. 23 [hereinafter Pl.'s Mot.].

## III.   LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  A "genuine dispute" of a "material fact" exists when the fact is "capable of affecting the substantive outcome of the litigation" and "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Elzeneiny v. District of Columbia*, 125 F. Supp. 3d 18, 28 (D.D.C. 2015).

"FOIA cases are typically and appropriately decided on motions for summary judgment." *Moore v. Bush*, 601 F. Supp. 2d 6, 12 (D.D.C. 2009). "FOIA requires federal agencies to disclose, upon request, broad classes of agency records unless the [agency shows that the] records are covered by" a statutory exemption, *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001), and that it "reasonably foresees that disclosure would harm an interest protected by [the] exemption," 5 U.S.C. § 552(a)(8)(A)(i)(I). The agency may carry its burden by submitting affidavits that "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009). "Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible." *Wolf v. CIA*, 473 F.3d 370, 374–75 (D.C. Cir. 2007) (internal quotation marks omitted). "To successfully challenge an agency's showing that it complied with the FOIA, the plaintiff must come forward with specific facts demonstrating that there is a genuine issue with respect to whether the agency has improperly withheld . . . agency records." *Span v. U.S. Dep't of Just.*, 696 F. Supp. 2d 113, 119 (D.D.C. 2010) (internal quotation marks omitted).

## IV.   DISCUSSION

The parties' motions raise three disputed issues.[1]   First, they contest Defendants' invocation of Exemption 6 to withhold pay information and security-clearance levels of higher-ranked applicants and the names of lower-ranked applicants. Pl.'s Mot., Pl.'s Mem. of P. & A. in Supp. of Pl.'s Mot., ECF No. 23-1 [hereinafter Pl.'s Mem.], at 10–25. Second, they dispute

---

[1] The State Department initially declined to disclose some information based on Exemption 4, but it has since withdrawn that withholding. *See* Defs.' Opp'n to Pl.'s Mot. and Reply in Supp. of Defs.' Mot., ECF No. 26 [hereinafter Defs.' Opp'n], at 16.

whether the Army and the Navy improperly withheld memoranda containing analysis and recommendations on applications based on the attorney-client and deliberative process privileges pursuant to Exemption 5. *See id.* at 28–30. And, finally, the *Post* challenges the adequacy of the search undertaken by the State Department. *See id.* at 34–35.[2] The court addresses each argument in turn.

### A.      Exemption 6

Exemption 6 exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). "Similar files" includes "[g]overnment records on an individual which can be identified as applying to that individual." *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982). To determine if an agency properly withheld material pursuant to Exemption 6, a court must weigh the "privacy interest in non-disclosure against the public interest in the release of the records in order to determine whether, on balance, the disclosure would work a clearly unwarranted invasion of personal privacy." *Lepelletier v. Fed. Deposit Ins. Corp.*, 164 F.3d 37, 46 (D.C. Cir. 1999) (internal quotation marks omitted). The public interest relevant to this balancing is "the extent to which disclosure of the information sought would shed light on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to." *Id.* (internal quotation marks and alterations omitted). Put differently, the inquiry "involves a 'balancing of interests between the protection of an individual's private affairs from unnecessary public scrutiny, and the preservation of the public's right to governmental information.'" *WP Co. LLC v. SBA*, 502 F. Supp. 3d 1, 17 (D.D.C. 2020) (citing *U.S. Dep't of*

---

[2] The *Post* also challenged the adequacy of the search performed by the Air Force, Pl.'s Mem. at 31–34, but the Air Force later conducted the search that the *Post* had suggested and promised to produce non-exempt records. Defs.' Opp'n at 17.

*Def. Dep't. of Mil. Affs. v. Fed. Lab. Rels. Auth.*, 964 F.2d 26, 29 (D.C. Cir. 1992)).  Importantly, this Exemption leans heavily in favor of disclosure, as the presumption to disclose is "at its zenith under Exemption 6."  *Nat'l Ass'n of Home Builders v. Norton*, 309 F.3d 26, 37 (D.C. Cir. 2002).

The court finds Defendants' rationales with respect to applicants' privacy interests unconvincing when confronted with the public's strong interest in disclosure.  Thus, the balancing test weighs in favor of disclosure of the withheld names, pay information, and security clearances.

### 1.   *Identities of Applicants Ranked O-6 and Lower*

In similar circumstances to this case, the D.C. Circuit has refined the Exemption 6 balancing inquiry when it comes to the withholding of identities.  In *American Immigration Lawyers Association v. Executive Office for Immigration Review,* the FOIA request at issue sought detailed information about complaints filed against immigration law judges, who are employees of the Department of Justice.  830 F.3d 667, 672 (D.C. Cir. 2016).  The agency released voluminous records about complaints and their outcomes, but it withheld the names of the judges under Exemption 6.  *See id.*  Having already disclosed "a substantial amount of information," the D.C. Circuit said, "[t]he relevant question" "is not whether disclosing . . . names would serve the public interest in disclosure in the abstract.  Instead, the question is whether, given the information already disclosed by [the agency], the incremental value served by disclosing [the] name outweighs that person's privacy interest."  *Id.* at 674 (internal quotation marks omitted).  The same question applies here: Does the incremental value served by public disclosure of the former service member's identity outweigh that person's privacy interest?

Defendants applied a bright-line filter when deciding which servicemembers' names were appropriate for disclosure.  Specifically, Defendants identified in the records "senior military officials, known as General and Flag Officers, who must be nominated by the President and

confirmed by the Senate," but not "retired non-senior service members who held ranks no higher than O-6." Defs.' Mem. at 19. General and Flag Officers are ranked O-7 and above. Defendants used this approach because service members who held ranks of O-6 and lower "are not public figures by virtue of their military service" and "have [not] opened themselves up to increased public scrutiny" in the way that higher-ranking officers had. *Id.* Defendants further assert that this distinction comports with the "expectations of service members," *id.* at 19–20, as reflected in two policy documents and cases from this court, *id.* at 21 (first citing *Bloche v. Dep't of Def.*, 370 F. Supp. 3d 40, 57 n.6 (D.D.C 2019); and then citing *Savage v. Dep't of the Navy*, No. 19-cv-2983 (ABJ), 2021 WL 4078669, at *8–10 (D.D.C. Sept. 8, 2021)).

Agencies are permitted to take a categorical approach, as Defendants have done here, to withholding information based on Exemption 6. *See Prison Legal News v. Samuels*, 787 F.3d 1142, 1149 (D.C. Cir. 2015). The definitions of the relevant categories must be sufficiently distinct to permit the court to assess whether Exemption 6 is properly applied. *See id.* "The range of circumstances included in the category must characteristically support an inference that the statutory requirements for exemption are satisfied." *Id.* at 1150 (cleaned up). "The question, then, is whether there has been a sufficient showing that the balancing analysis under Exemption 6 would yield a uniform answer across the entire proffered category, regardless of any variation among the individual records or persons falling within it." *Am. Immigr. Laws. Ass'n*, 830 F.3d at 675. The court thinks Defendants have not made that showing.

Defendants' rationale for drawing the identity-disclosure line at the O-6/O-7 rank, at least in this context, is unconvincing. Underlying the distinction is the view that General and Flag Officers, because they must be appointed and confirmed, "arguably have opened themselves up to increased public scrutiny," whereas lower-ranked personnel are not "public figures by virtue of

their military service." Defs.' Mem. at 19. But Defendants' support for that proposition is weak. Defendants first point to a revised FOIA policy adopted in 2001, in the aftermath of 9/11. *See id.* at 19–20. They point out that the policy states it "does not preclude a DoD component's discretionary release of names and duty information of personnel who, by the nature of their position and duties, frequently interact with the public, such as flag/general officers, public affairs officers, or other personnel designated as official command spokespersons." Defs.' Mem. at 20 (quoting Defs.' Mot, Ex. A, ECF No. 21-8 [hereinafter 2001 and 2005 DoD Policies], at 4. The 2001 Policy, however, appears to apply only to "active duty military personnel, civilian employees, contractors, members of the National Guard and Reserves, military dependents, and Coast Guard personnel when the Coast Guard is operating as a service in the Navy." 2001 and 2005 DoD Policies at 3.[3] Furthermore, the 2001 DoD Policy does not categorically exempt disclosing the names of lower-ranked personnel. To the contrary, it provides that "[o]rdinarily names of DoD personnel . . . mentioned in documents that are releasable under FOIA *should not be withheld*, but in *special circumstances* where the release of a particular name would raise substantial security or privacy concerns, such a name may be withheld." *Id.* at 4 (emphases added). That statement of policy is directly at odds with Defendants' categorical approach here. Defendants have not identified any "special circumstances" that would justify the wholesale withholding of names below a certain rank.

Defendants also point to a 2005 revision of the 2001 Policy. *See* Defs.' Mem. at 20 (citing 2001 and 2005 DoD Policies). That policy states that, "[i]n general, release of information on

---

[3] Defendants acknowledge the policy applies only to active personnel but argue the distinction they've drawn "only grow[s] more pronounced when considered in the context of retired service members who are now private citizens." *See* Defs.' Mem. at 20 n.8. It is not clear why that must be so. Retired service members, even of lower rank, who willingly subject themselves to scrutiny by seeking approval for foreign-government employment seemingly would have a lesser expectation of privacy than an active service member who is pulling down a taxpayer-funded salary.

[department] personnel will be limited to the names, official titles, organizations, and telephone numbers for personnel only at the officer director level or above, provided a determination is made that disclosure does not raise security or privacy concerns."  2001 and 2005 DoD Policies at 1. The 2005 Policy, however, sheds little light on the present question.  That update was prompted by requests for contact information to make available in publicly available publications; it does not speak to privacy expectations relating to records subject to FOIA.  *See id.*

The cases that Defendants cite from this District do not help them.  *See* Defs.' Mem. at 21. In *Bloche v. Department of Defense*, the court permitted the Navy to withhold "the names of non-senior military interrogators" from a Guantanamo Bay detention facility interrogation log, but the court there was not distinguishing between "senior" and "non-senior" service members, as Defendants do here.  370 F. Supp. 3d at 57 n.6.  And, unlike here, the log record implicated national security concerns, which the court found warranted application of Exemption 1.  *See id.* at 57. *Savage v. Department of Navy* is likewise inapposite.  There, the court affirmed the nondisclosure of names of Navy personnel other than "flag-level officers and other designated positions" in a report of investigation into racial discrimination under Exemption 7(C).  2021 WL 4078669, at *8. But the court there was not asked to pass on the relative privacy interests of flag-level officers versus others; that distinction was made by the Navy and accepted by the parties and the court.

Defendants also look to cases from outside the District, notably *Seife v. United States Department of State*, 298 F. Supp. 3d 592 (S.D.N.Y. 2018).  Defs.' Mem. at 21.  There, the court credited the Department of Defense's "practice" or "policy" of withholding "personally identifying information of its members who hold the military rank of Colonel or below, or are otherwise ranked on the General Schedule ('GS') at GS–15 or lower."  *Id.* at 628.  It is unclear whether the "practice" or "policy" identified in *Seife* is the same as the policies Defendants rely on here.  Unlike

10

*Seife*, none of Defendants' affiants in this case refer to a blanket Department-wide policy to withhold the identities of personnel below the O-7 rank.  *See id.* (citing declaration).  If anything, the 2001 Policy is to the contrary: "[o]rdinarily names of DoD personnel . . . mentioned in documents that are releasable under FOIA should not be withheld," except in "special circumstances."

Admittedly, retired personnel have *some* privacy interest in the non-disclosure of their identities.  The D.C. Circuit has said, however, that Exemption 6 "does not categorically exempt individuals' identities . . . because the 'privacy interest at stake may vary depending on the context in which it is asserted.'"  *Jud. Watch, Inc. v. FDA*, 449 F.3d 141, 153 (D.C. Cir. 2006) (quoting *Armstrong v. Exec. Office of the President*, 97 F.3d 575, 582 (D.C. Cir. 1996)).  That is true here. The privacy interest of lower-level retired personnel may be more substantial than someone just below the level of General and Flag Officers.  For example, the *Post* points to one retired U.S. Air Force Colonel and two retired Marines Colonels who, respectively, applied for approvals to work for a Russian state-owned enterprise and Saudi Arabia's Ministry of Defense.  Pl.'s Mem. at 23–24.  DOD and the State Department approved both applications, permitting the retired officers to receive hundreds of thousands of dollars in annual compensation.  *See id.*  The privacy interests of someone so situated cannot be deemed categorically greater than someone of higher rank just because the latter category of officers requires presidential nomination and Senate confirmation. *See Armstrong v. Exec. Off. of the President*, 97 F.3d 575, 582 (D.C. Cir. 1996) (holding "a categorical rule forbidding disclosure of the names of lower-level FBI agents in all activities is invalid" because "[t]he privacy interest at stake may vary depending on the context in which it is asserted").  These scenarios do not lend themselves to categorical analyses.

And then there is the public interest.  The court agrees with the *Post* that there is a strong public interest in knowing what former military personnel have been granted *constitutional* approval to work for and be compensated by a foreign government.  Defendants also apparently agree that there is a strong public interest, for in their view that interest tipped in favor of disclosure for more senior retired members.  Given that acknowledgement, the court cannot permit a categorical approach to withholding the names of applicants ranked O-6 or lower.  The privacy interests of all persons in that category does not decidedly tip in favor of non-disclosure, given the strength of the public interest in disclosure.

### 2.    *Pay Information of Applicants Ranked O-7 or Higher*

The court also finds that Defendants have struck an improper balance under Exemption 6 by withholding all pay information of applicants ranked O-7 or higher.

The *Post* does not dispute that these applicants have a privacy interest in their financial information.  Pl.'s Mem. at 12–13; *see Multi Ag Media LLC v. Dep't of Agric.*, 515 F.3d 1224, 1230 (D.C. Cir. 2008) (holding that the disclosure of files that would "allow for an inference to be drawn about the financial situation of an individual farmer" would comprise more than a *de minimis* privacy interest).  It does argue, however, that such privacy interests are diminished because retired senior military officials are subject to recall and had to make public financial disclosures when they were active, *see* Pl.'s Mem. at 13, but the court need not decide whether those factors weaken the privacy interest.  When considering the public interest, it is apparent that disclosure would not result in a "clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).

A public interest exists where the public "can more easily determine" how an agency carries out its statutory mandate.  *Multi Ag Media*, 515 F.3d at 1232.  That standard is met here.

First, disclosing compensation information would permit the public to understand to what extent the amount of income from a foreign government factors into the approval process.  Is there a threshold amount that the agencies will not approve?  Do higher incomes receive more scrutiny than lower amounts?  Are the agencies more likely to approve lucrative compensation for higher-ranking military officials than lower ones?  Do the agencies consider the amount of compensation when a former service member also receives compensation through a U.S. government contractor?  Answers to these questions would shed light on how the Executive Branch performs is statutory duties.

The *Post* provides one striking example of how the amount of compensation might factor into the approval process.  As a result of a different FOIA request, the *Post* obtained the "Foreign Government Employment Case" of a retired four-star Air Force general who sought consent to enter into an advisory contract with a state-controlled aviation company for $5,000 per day.  *See* Pl.'s Notice of Suppl. Authority, ECF No. 29, Ex. A, ECF No. 29-1, at 1.  The director of the review board who considered the application noted that a previous commander also had "accepted some level of compensation from [the aviation company] immediately or soon after his retirement."  *Id.* at 2.  In recommending denial of the application, the director noted that the Air Force had spent millions of dollars on support services from the aviation company during the applicant's and his predecessor's commands, and that the Air Force "should do nothing that would cause Congress or the media to question whether the hundreds of millions of dollars flowing to [the aviation company] are solely for valid national security needs."  *Id.*  The director continued: "However inaccurate, these compensated relationships could raise questions as to whether one motivation for the [Air Force's] expenditures is that . . . commanders know that a perk of office is a lucrative advisory contract from [the aviation company] upon retirement."  *Id.*  This example

provides a vivid illustration of how the dollar value of the proposed compensation may factor into a military branch's decision-making to approve or reject the acceptance of an emolument.

The court also agrees with the *Post* that "the public has a compelling interest in understanding the extent of influence that foreign powers may have over America's former military leaders." Pl.'s Mem. at 15. It is true that, by definition, these individuals are no longer on active duty. But that does not mean they cannot influence U.S. strategic interests. Retired military officials may advise U.S. defense contractors. They also may go back into public service. *See id.* (citing as an example General James Mattis who retired from the military in March 2013 and worked as a military advisor to the United Arab Emirates only to return as Secretary of Defense in January 2017). The public has a strong interest in knowing if former military leaders were or are being compensated by foreign governments if they also perform U.S. government functions. In addition, the information can help inform the public about a military official's interaction with a foreign government while in active service. As the example of the four-star Air Force general from the prior paragraph shows, the public has a right to know if high-ranking military leaders are taking advantage of their stations—or might be perceived to be doing so—to create employment opportunities with foreign governments in retirement.

The strength of the public interest in disclosure is clear, and it outweighs an applicant's privacy interest in their foreign-employment income. DOD and the State Department therefore shall release the income information it has withheld from the released records.

### 3.   Security Clearances

The court is likewise not convinced that information about security-clearance levels, if revealed, would constitute a "clearly unwarranted invasion of privacy." The applicant's privacy interest in such information is not "particularly strong." *Multi Ag Media*, 515 F.3d at 1230. First,

it is reasonable to assume that security clearances are generally correlated with rank, such that disclosing that a retired General or Flag Officer has a Top Secret security clearance would hardly invade the applicant's personal privacy interest.  Second, the information is not inherently personal but is a status attendant to performance of one's official duties.  Clearance information therefore only minimally implicates a "personal privacy" interest.  *FCC v. AT &T Inc.*, 562 U.S. 397, 408 (2011); *see Sims v. CIA*, 642 F.2d 562, 575 (D.C. Cir. 1980) ("Exemption 6 was developed to protect intimate details of personal and family life, not business judgments and relationships.").  And, third, it is difficult to conceive of how disclosure of one's security-clearance level would embarrass or invite unwarranted intrusions.  Defendants say that there is a privacy interest in such information because "[r]evealing such information would potentially expose the programs or operations to which the individual was assigned during his military career."  Defs.' Mem. at 23.  Defendants, however, offer no factual support for this proposition.  *See id.* And it is far from clear how connecting a military officer's identity and security clearance could reveal anything about what the person worked on (even assuming such disclosure would rise to an invasion of *personal* privacy).  The public hardly would be surprised to learn that a high-ranking military official worked on highly classified programs.

On the other side of the balance, the public has an interest in knowing the extent to which an applicant's security clearance is a factor in approving or rejecting foreign employment.  Presumably, the information is contained in the applicant's file for a reason.  At least the Navy believes the public interest favors disclosure of the information.  Unlike the Army and Air Force, the Navy released the security clearances of officers ranked O-7 or higher.  *See* Pl.'s Reply Mem. in Further Supp. of Pl.'s Mot., ECF No. 28 [hereinafter Pl.'s Reply], at 8–9 (citing Pl.'s Reply, Second Decl. of Craig Whitlock, ECF No. 28-3, ¶ 3).  Such inconsistent treatment of security-

clearance information only confirms the court's assessment that disclosing that information would not result in a clearly unwarranted invasion of personal privacy. As a result, the court will order the release of withheld security clearances information.

4. *Exemption 7(C)*

The Air Force invoked Exemption 7(C) to withhold the name and rank of individuals contained in a report prepared in connection with an investigation against a military officer alleged to have violated a federal statute. Defs.' Mot, Decl. of Joanne Collins, ECF No. 21-2, ¶ 32. It is unclear to the court how this record relates to the *Post*'s request for foreign-employment-application information. In any event, the *Post* does not specifically contest this withholding. *See* Pl.'s Mem. at 11 n.2 (arguing only that the same balancing applies whether a record is withheld under Exemption 6 or 7(C)). And the appearance of a person's name in a law-enforcement record carries heightened privacy interests if the person has not been publicly identified. *See Citizens for Resp. & Ethics in Wash. v. U.S. Dep't of Just.*, 854 F.3d 675, 681 (D.C. Cir. 2017). The court therefore affirms the withholding of information pursuant to Exemption 7(C).[4]

**B.     Exemption 5**

Next, the parties contest the Army's and Navy's withholding of certain internal memoranda pertaining to applications for foreign employment. The 127 pages withheld by the Army were prepared by an Attorney-Advisor and were directed to the Army Personnel Records Division. Def.'s Mot., Decl. of Major Robert Wald, ECF No. 21-5 [hereinafter Wald Decl.], ¶ 15. The Army memoranda address the "legal sufficiency of [foreign government employment] requests for the purpose of the decision-maker deciding whether or not to approve the application." *Id.*

> They contain a lawyer's determination regarding the legal
> sufficiency of the application, legal objections to approving the

---

[4] The *Post* does not contest the withholding of the identifying information of investigative personnel based on Exemption 7(C). *See* Pl.'s Mem. at 11 n.2.

> application, and an analysis of how the attorney came to their determination. Specifically, the attorney analyzed the form of the application, the nature and description of the duties to be performed for the foreign government, the compensation received by the service member, any oaths of allegiance required to enter the employ of the foreign government, and the applicant's retirement date and derogatory information.

*Id.* The Navy memoranda are similar. They were drafted by Judge Advocates to advise the Commandant of the Marine Corps "as to whether it is legally advisable to support the applications for foreign government employment." Defs.' Mot., Decl. of Lieutenant Commander Ann Oakes, ECF No. 21-4 [hereinafter Oakes Decl.], ¶ 32. The Navy withheld 14 such memoranda. *Id.* ¶ 31. The branches rely on Exemption 5 for their withholdings, asserting that they are covered by both the attorney-client and deliberative process privileges. Defs.' Mem. at 13.

Exemption 5 protects from disclosure "inter-agency or intra-agency memorandums or letters that would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). This exemption effectively affirms the application of evidentiary privileges to FOIA actions—most notably the attorney-client and deliberative process privileges. *See NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149–51 (1975) (establishing that Exemption 5 clearly contemplates and integrates both privileges in practice). With the understandable concern that without it agencies may not have "sound legal advice," this Exemption "is intended to protect the quality of agency decision-making by preventing the disclosure requirement of the FOIA from cutting off the flow of information to agency decision-makers." *Pub. Emps. for Env't Resp. v. EPA*, 211 F. Supp. 3d 227, 230–31 (D.D.C. 2016). The attorney-client privilege specifically protects communications between agency counsel and agency officials and employees. *In re Lindsey*, 148 F.3d 1100, 1104–05 (D.C. Cir. 1998) (per curiam). The deliberative process privilege functions somewhat differently, protecting those communications made while an agency or

agencies are preparing a final decision.  *See Sears*, 421 U.S. at 150–51.  These communications include "advisory opinions, recommendations and deliberations," *id.* at 150, so that "the candid and frank exchange of ideas" can improve "the quality of administrative decisions."  *Nat'l Sec. Archive v. CIA*, 752 F.3d 460, 462 (D.C. Cir. 2014)

> 1.      *Attorney-Client Privilege*

A party can only invoke the attorney-client privilege if "the communication from attorney to client is confidential" and "the communication is based on confidential information provided by the client."  *Schlefer v. United States*, 702 F.2d 233, 245 (D.C. Cir. 1983) (Ginsburg, J.). The *Post* challenges both criteria.  It contends that the branches have failed to show that the memoranda are confidential and based on information provided by the client.  Because the court agrees with the latter contention, it need not reach the former.

*Schlefer v. United States* concerned documents containing legal advice from an agency's chief counsel to agency officials.  The officials sought legal guidance to assist them in ruling on requests from "outsiders."  *Id.* at 235–36.  The D.C. Circuit held that the documents were not protected by the attorney-client privilege and had to be disclosed under FOIA because the factual information contained in the documents was not provided by the "client"—an agency official— "but by a third party—the outsider who seeks a ruling from the Agency."  *Id.*  "The outsider's communications to the official do not contain any confidential information *concerning the Agency*; when the official transmits the relevant facts to the Chief Counsel, no new or confidential information *concerning the Agency* is imparted."  *Id.*  Accordingly, the court held, the documents "do not fall within the scope of the attorney-client privilege and are not within FOIA exemption 5."  *Id.* (footnote omitted).

The court reached a similar conclusion in *Tax Analysts v. IRS*, 117 F.3d 607 (D.C. Cir. 1997). At issue there were "Field Service Advice Memoranda." *Id.* at 608. The memoranda were prepared by the IRS Chief Counsel at the request of field personnel and provided legal guidance, "usually with reference to the situation of a specific taxpayer." *Id.* at 609. Finding *Schlefer* "directly on point," the court held that "[t]o the extent that the legal conclusions in the [memoranda] are based upon information obtained from taxpayers, *Schlefer* holds that the attorney-client privilege does not apply." *Id.* at 619. By contrast, the court held, portions of the memoranda that "may reveal confidential information transmitted by field personnel" were covered by the privilege. *Id.* at 619–20. *See also Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 863 (D.C. Cir. 1980) (holding that when agency auditors communicate information from third parties to the agency's regional counsel and ask for legal advice, the regional counsel's written responses containing "neutral, objective analyses of agency regulations" are not privileged).

*Schlefer*, *Tax Analysts*, and *Coastal States* are controlling here. As in those cases, the legal memoranda withheld by the Army and the Navy are based upon information provided by the applicants, not the military branch "client." The information submitted by retired servicemembers necessarily comes from third parties "seek[ing] a ruling from the [a]gency." *Schlefer*, 702 F.2d at 245. The communications therefore do not contain confidential information "*concerning the Agency.*" *Id.*

Defendants do not genuinely grapple with these cases. Instead, they contend that the *Post* has "incorrectly characterize[d] the content of the memoranda." Defs.' Opp'n to Pl.'s Mot. & Reply in Supp. of Defs.' Mot., ECF No. 26 [hereinafter Defs.' Opp'n], at 2. According to Defendants, "[k]ey facts from the application file are one of the datapoints that would have been

considered by attorneys in formulating the memoranda, but attorneys also necessarily would have considered other facts originating from agency personnel." *Id.* But Defendants offer no factual support for the assertion that the memoranda contain "facts originating from agency personnel." The Oakes Declaration does say that the Navy's memoranda are "based upon the factual predicate provided by the Deputy Commandant, Manpower and Reserve Affairs," Oakes Decl. ¶ 32, but it does not suggest that the "factual predicate" comes from any source other than the applicant.

The court therefore rejects Defendants' invocation of Exemption 5 to withhold the entirety of the legal memoranda at issue. They are not protected in full by the attorney-client privilege. However, to the extent that any memorandum contains confidential information provided by and concerning the branch itself, such material would be covered by Exemption 5.

### 2.    Deliberative Process Privilege

The *Post* concedes that the deliberative process privilege applies to the withheld memoranda. *See* Pl.'s Mem. at 30–31. Its only dispute is the extent to which factual information held from the memoranda is segregable. *See id.* FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record" once proper redactions of exempt portions are made. 5 U.S.C. § 552(b). To find a document completely exempt, an agency must provide a "detailed justification for its non-segregability." *Johnson v. Exec. Off. for U.S. Att'ys.*, 310 F.3d 771, 776 (D.C. Cir. 2002) (internal quotation marks omitted).

Defendants' efforts to provide a "detailed justification" fall short. Defendants' declarants suggest that facts within the memoranda can be segregated. *See* Defs.' Opp'n, Suppl. Decl. of Ann Oakes, ECF No. 26-2 [hereinafter Suppl. Oakes Decl.], ¶ 7 (stating that, "to the extent that the facts referenced in the memorandum were provided by an applicant, the same facts have been produced to Plaintiff as part of the applications themselves, subject to applicable FOIA

exemptions"); Defs.' Opp'n, Suppl. Decl. of Major Robert Wald, ECF No. 26-3 [Suppl. Wald Decl.], ¶ 6 (same).   Yet the declarants still say that the "factual references . . . are inextricably intertwined with legal analysis and deliberative, pre-decisional discussion."  Suppl. Oakes Decl. ¶ 7; Suppl. Wald Decl. ¶ 6.  But they do not explain why that is so.  Indeed, neither declarant says that they conducted the usual "line-by-line review" to determine whether any factual material can be segregated.  *See Johnson*, 310 F.3d at 776.  The court therefore orders Defendants to release any reasonably segregable factual material from the memoranda.

###   C.   Search Adequacy

The parties entered this stage of litigation with an understanding that the State Department *would not* have completed a thorough search, retrieval, and production of the documents in its possession.   The parties agreed instead that the State Department would release "final determination letters" in advance of partial summary judgment briefing.   JSR at 2.  The *Post* now complains that the State Department "failed to produce . . . [] approximately 140 records, representing 25 percent of all responsive records."  Pl.'s Mem. at 34 (emphasis omitted).  The State Department does not necessarily deny this claim, but argues that its production was made "only to facilitate the Court's adjudication of the parties' disagreement over certain Exemption 6 issues." Defs.' Opp'n at 17.

The court finds the parties' dispute not yet ripe for review.  The court will permit the State Department to complete its production before assessing the adequacy of its search.

## V.   CONCLUSION AND ORDER

For the reasons stated above, the parties' motions for partial summary judgment, ECF Nos. 21 and 23, are granted in part and denied in part.  The court orders as follows:

(1) Defendants shall disclose the income and security clearance information for applicants ranked O-7 and higher.

(2) Defendants shall conduct an individualized assessment of the public and private interests with respect the names of applicants ranked O-6 and lower.

(3) Defendants may not withhold any Army or Navy internal memorandum based on the attorney-client privilege, except to the extent such memorandum contains confidential information provided by the branch itself.

(4) Defendants shall disclose any reasonably segregable factual materials withheld from the Army and Navy internal memoranda.

The *Post*'s motion is denied insofar as it challenges the Air Force's withholding of information under Exemption 7(C) and the State Department's search.

The parties shall file a joint status report by November 8, 2022, that updates the court on the continued processing and production of responsive records, including the information the court has ordered disclosed pursuant to this Memorandum Opinion and Order.

Dated:  September 9, 2022

Amit P. Mehta
United States District Judge